COMMONWEALTH of Pennsylvania,
Appellee,

v.

Ford HOWARD, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 1, 1999.
Filed May 17, 1999

Patricia M. Dugan, Philadelphia, for appellant.

Catherine Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before POPOVICH, STEVENS and BROSKY, JJ.

STEVENS, J.:

¶ 1   This appeal is from the judgment of the Court of Common Pleas of Philadel-

phia County which sentenced Appellant Ford Howard to serve a term of life imprisonment for third degree murder, a consecutive term of five (5) to ten (10) years imprisonment for aggravated assault, a concurrent term of imprisonment of five (5) to ten (10) years for criminal conspiracy, and eleven and one-half (11½) to twenty-three (23) months imprisonment for possessing an instrument of crime. After a review of the record and briefs of the parties, we affirm the decision of the trial court.

¶ 2 The relevant facts and procedural history are as follows: Appellant, and co-defendants Rodney Wells and Craig Murphy, were tried together for the murder of Noble Green and the eventually fatal assault on William Bud Johnson. The facts indicate that Appellant, Murphy and Wells were confederates in a drug-dealing association referred to as "the Family" which functioned in the early 1980's. Through the operations of "the Family," hundreds of thousands of dollars worth of cocaine were distributed in the City of Philadelphia. According to testimony, the group engaged in large-scale narcotics transactions, with bulk purchases of cocaine.

¶ 3 One of the functions of "the Family" was the elimination of anyone who interfered with its dominance in or control over its portion of the cocaine trade. Both Noble Green and William Bud Johnson were members of a rival drug-dealing gang known as the "20[th] and Carpenter Gang," and testimony at trial indicated that the "20[th] and Carpenter Gang" was "moving in on" "the Family's" drug dealing territory.

¶ 4 William Bud Johnson testified along with Florence Daniels at trial.[1] Collectively, the witnesses testified to the following: On July 16, 1983, Appellant, Wells, and Murphy drove to 23rd and Pierce Streets. Noble Green was in a car with co-defendant Wells and signaled Johnson to the car. Johnson, who had been walking down the street with his fiancée, the now-deceased Theresa Teagle, got into the

back seat of the vehicle at the request of Green. Green told Johnson that "these guys [referring to Wells] say we[']re harassing them." Immediately, Johnson's instincts told him to try to exit the car but, before he could escape, Wells held up his hand, signaled to Appellant and Murphy, who started shooting. As a result, Noble Green died that night, and Johnson never recovered. Florence Daniels, a witness who was in the vicinity of the assault, watched the men position themselves on the street corners, witnessed Johnson get into the car and then heard the shooting as it began. Florence Daniels positively identified Murphy and Appellant as two of the men she saw on the street corner that day.

¶ 5 The jury found Appellant guilty of the above charges and Appellant was sentenced accordingly. No appeal was taken until nearly eight years later when Appellant filed a petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541–9546. On July 7, 1997, Appellant was granted a direct appeal *nunc pro tunc.*

¶ 6 Appellant raises two issues on appeal: First, Appellant claims that his trial counsel rendered ineffective assistance; second, Appellant claims that actions by the Commonwealth were tantamount to prosecutorial misconduct. We will address these claims *in seriatam.*

██ ¶ 7 Appellant raises several arguments alleging ineffective assistance of trial counsel. In order for Appellant to prevail on each claim of ineffective assistance of counsel, he must show: (1) the underlying claim is of arguable merit; (2) the particular course of conduct of counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

██ ¶ 8 Appellant first claims that his counsel was ineffective because counsel was a recent law school graduate with no

---

1. Although Johnson was able to testify at trial,   he subsequently died from his injuries.

experience defending a murder charge. It is well settled that mere inexperience of counsel does not, in itself, establish ineffectiveness. *See Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955 (1984). We will examine each of Appellant's claims to determine whether counsel's purported inexperience led to ineffective assistance.

¶ 9 Appellant claims that trial counsel was ineffective because he did not meet with him often enough in preparation for trial. "The length of time dedicated to client consultation affords no basis for inferring the extent of trial preparation." *Commonwealth v. Ellis*, 700 A.2d 948, 960 (Pa.Super.1997). Appellant has not provided any evidence to support his allegation of inadequate preparation. Here, counsel met with Appellant prior to trial, and we will not deem trial counsel ineffective for lack of preparation without sufficient proof. *Commonwealth v. Johnson*, 527 Pa. 118, 588 A.2d 1303 (1991). As such, Appellant's claim fails.

¶ 10 Appellant next claims that trial counsel was ineffective in failing to file a direct appeal on his behalf. Whether trial counsel was ineffective in not filing a direct appeal is of no consequence since Appellant has been granted this direct review of all of his claims.[2] Thus, Appellant cannot now claim prejudice.

¶ 11 Appellant next claims that counsel was ineffective in failing to raise the issue of prosecutorial misconduct. More specifically, Appellant claims that counsel was ineffective in failing to raise the issue of misconduct based on the Commonwealth's failure to disclose an immunity agreement entered into with their witness, Charles Harris. Besides Appellant's bald assertion, he has provided no support in the record for such an agreement between the Commonwealth and witness Harris. Thus, we find Appellant's claim fails.

¶ 12 Appellant next claims that trial counsel was ineffective in failing to move *in limine* or, in the alternative, object to evidence of, unrelated, uncharged criminal activity by Appellant. Appellant claims numerous incidents of alleged submissions of excludable, prejudicial testimony, but only specifically cites to the testimony of December 9, 1985, and December 13, 1985.[3] A review of the record and notes of testimony does not show that any proceeding occurred on those days. Because Appellant has failed to point to any specific testimony, but again relies on sweeping, yet unsubstantiated suppositions, his claim fails.

¶ 13 Appellant next claims that trial counsel was ineffective for failing to object to the trial court's instruction on accomplice liability. Appellant claims that a conviction for first degree murder based on a theory of accomplice liability can only be found where there is a shared intent of Appellant and his compatriots to kill. However, since Appellant was not convicted of first degree murder, any claim regarding the charge is moot. That is, even if true, we can provide no relief to Appellant based on this claim.

¶ 14 Appellant also alleges prosecutorial misconduct based on the Commonwealth's failure to disclose an immunity agreement with prosecution witness, Charles Harris. As discussed *supra*, Appellant has cited no support in the record for such an agreement between the Commonwealth and witness Harris. Absent some showing of proof, we find Appellant's claim fails.

¶ 15 Based on the forgoing, we affirm the decision of the trial court.

¶ 16 Affirmed.

---

2. It should be noted that Appellant does not aver that he requested his counsel take an appeal from his conviction.

3. Appellant actually cites testimony from December 13, 1995. While we assume that this may be a typographical error, a review of the record shows that no proceeding occurred on either date.