COMMONWEALTH of Pennsylvania, Appellee

v.

Joseph M. FOREMAN, Appellant.

Commonwealth of Pennsylvania, Appellant

v.

Joseph M. Foreman, Appellee.

Superior Court of Pennsylvania.

Submitted Jan. 14, 2002.

Filed April 25, 2002.

James McHugh, Media, for Foreman.

A. Sheldon Kovach and Patrick L. Meehan, Asst. Dist. Attys., Media, for the Com.

Before: MCEWEN, P.J.E., BOWES and BROSKY, JJ.

BOWES, J.:

¶ 1 Joseph Foreman appeals from the September 12, 2000 judgment of sentence of five to twelve months imprisonment followed by two years probation that was imposed after he was convicted of multiple counts of receiving stolen property, tampering with or fabricating physical evidence, removal or falsification of vehicle identification numbers, and dealing in vehicles with removed or falsified numbers. Following imposition of the judgment of sentence, Appellant filed post-sentence motions. Evidentiary hearings were held on October 27, 2000, and February 2, 2000, to determine whether Appellant's jury-trial waiver was voluntary and whether defense counsel was ineffective at trial. On February 20, 2001, the trial court found that it erred in admitting certain Commonwealth evidence and granted judgment of acquittal on some of the charges. However, it left the sentence intact. This appeal and cross-appeal followed.[1] We affirm in part and reverse in part.

¶ 2 On October 20, 1998, approximately eight members of the Pennsylvania State Police Auto Theft Task Force executed a search warrant at Sport Cycle and Salvage, a motorcycle repair business owned and operated by Appellant in Prospect Park, Pennsylvania. As a result of the search, two stolen motorcycles, thirteen engines from stolen motorcycles, one frame of a stolen motorcycle, and six sets of metal punch stamps were seized. Police also discovered a stolen gas tank, but it mistakenly was left behind after it was boxed and marked for seizure. When the police returned the next day to retrieve the box, it had been torn open, and the tank was missing.

¶ 3 Nine Commonwealth witnesses testified that their motorcycles were stolen on various dates between 1996 and 1998. After studying police reports, certificates of title, and vehicle registration documents provided by the Commonwealth, the witnesses stated for the record the vehicle

---

1. We refer to Joseph Foreman as Appellant. *See* Pa.R.A.P. 2136.

identification numbers of their stolen motorcycles. In this manner, the Commonwealth established the vehicle identification number of each witness's motorcycle and that the motorcycles which bore those numbers, in fact, had been stolen. The Commonwealth also showed photographs of motorcycle engines to a few witnesses, but they were not sure if the engines in the photographs were from their motorcycles. A tenth Commonwealth witness, whose motorcycle was seized at Appellant's business, testified that he purchased the motorcycle from Appellant in 1998 and later returned it to Sport Cycle and Salvage for repairs. That motorcycle had been reported stolen by a resident of New Jersey in 1992. Some of the engines bore altered serial numbers.

¶ 4 Delaware County Detective Lawrence Hughes, who also participated in the search of Appellant's business, enumerated the seized items and explained that he relayed their various identification and serial numbers to police agencies, which confirmed that the items had been reported stolen. With regard to engines found at Appellant's business, he was able to link them to motorcycles that had been reported stolen by cross-referencing the engines' serial numbers with the vehicle identification numbers recorded from the original motorcycle frames. Further, Detective Hughes testified that six sets of metal punch stamps, which often are used by individuals who operate "chop shops" to alter identification numbers found on stolen goods, were found at Appellant's business. Chop shops are businesses that illegally dismantle stolen vehicles in order to resell the parts. The detective opined that the presence of such stamps at Sport Cycle and Salvage indicated that Appellant was operating a chop shop rather than a legitimate business.

¶ 5 The Commonwealth then called Pennsylvania State Police Trooper Kurt J. Tempinski who, after being accepted by the trial court as an expert in forensic firearm and tool mark identification, opined that certain of the stamps found at Sport Cycle and Salvage had been used to alter the altered serial numbers on the motorcycle engines seized by police from that shop.

¶ 6 At trial, Appellant's strategy was to admit that the items were stolen but deny that he knew that they were stolen. Appellant estimated that there were approximately 100,000 motorcycle parts in his shop when the police executed their search warrant and said he had no knowledge that the seized items were stolen. He also denied altering identification numbers on any of the seized goods and stated that he fired Paul Dorward, a former employee who had been stealing from him, prior to the execution of the search warrant. Appellant accused Mr. Dorward of purchasing the metal punch stamps and leaving them behind. Appellant, his secretary, and Mr. Dorward were the only individuals who ever worked at Sport Cycle and Salvage.

¶ 7 Following a four-day bench trial, Appellant was convicted of one count of tampering with evidence, seven counts of receiving stolen property, eight counts of dealing in vehicles with falsified numbers, and six counts of removal or falsification of vehicle identification numbers.

¶ 8 Appellant then filed post-sentence motions in which he argued, *inter alia,* that trial counsel was ineffective for failing to object to Trooper Tempinski's testimony on the basis that it failed to meet the standard for the admission of expert testimony set forth in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923).

¶ 9 On June 21, 2001, the trial court issued an order granting in part and deny-

ing in part Appellant's post-sentence motions. The court found that it erroneously had permitted Trooper Tempinski to testify as an expert witness in tool mark identification under *Frye, id.*, because the Commonwealth presented no evidence that the technique used by the witness to link the metal punch stamps to the alterations on the stolen motorcycle engines was generally accepted by the scientific community. The court granted Appellant a judgment of acquittal with respect to twelve counts at issue. The trial court granted no additional relief, and this appeal and cross-appeal followed.

¶ 10 Appellant's first contention on appeal is that the evidence presented at trial was insufficient to sustain his convictions. When considering a challenge to the sufficiency of the evidence, "we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner and determine whether the jury could find every element of the crime beyond a reasonable doubt." *Commonwealth v. Romero*, 555 Pa. 4, 17, 722 A.2d 1014, 1020 (1999). Any question of doubt is for the factfinder, unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Ketterer*, 725 A.2d 801, 804 (Pa.Super.1999). Additionally, this Court has observed that:

> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence

produced, is free to believe all, part, or none of the evidence.

*Commonwealth v. Dellavecchia*, 725 A.2d 186, 188 (Pa.Super.1998) (quoting *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 549 (1992)).

¶ 11 Appellant's challenge to the sufficiency of the evidence is twofold and relates to his conviction for receiving stolen property. Appellant first contends that the Commonwealth failed to prove that the seized property actually was stolen. Second, Appellant argues that the evidence failed to establish that he possessed the requisite "guilty knowledge" to sustain his conviction. Appellant's brief at 26. We reject both claims.

¶ 12 In order to obtain a conviction for receiving stolen property, the Commonwealth must establish the following elements beyond a reasonable doubt: (1) the property was stolen; (2) the defendant was in possession of the property; and (3) the defendant knew or had reason to believe the property was stolen. *Commonwealth v. Matthews*, 429 Pa.Super. 291, 632 A.2d 570, 571 (1993).

¶ 13 In the instant case, Appellant argues that the Commonwealth failed to establish that the seized motorcycles and engines actually were stolen because the Commonwealth's evidence "stemmed from the testimony of the purported owners of the motorcycles, each of whom had no personal knowledge of the vehicle identification numbers or engine numbers of their respective motorcycles." Appellant's brief at 25. Since none of the witnesses were able to identify the motorcycles or engines recovered by the police as their property until informed of the vehicle identification numbers by Detective Hughes, Appellant contends that their testimony was untrustworthy. Finally, Appellant continues, since Detective Hughes relied upon hear-

say information from police agencies to confirm that motorcycle frames and engines found at Sport Cycle and Salvage had been reported stolen, Detective Hughes's testimony was inherently unreliable and inadmissible.

¶ 14 Initially, we note that Appellant admitted at trial that the items were stolen. His strategy was to deny guilty knowledge based upon the volume of his business and his explanation of how he came into possession of the goods. Furthermore, as a practical matter, it is neither astonishing nor legally significant that the nine Commonwealth witnesses who testified about their stolen motorcycles could not recall their vehicle identification numbers or engine serial numbers from memory. Similarly, it is of little import that they were unable to identify positively their motorcycles or engines years after they were stolen, especially when the evidence showed that many of the motorcycles had been equipped with different engines.

¶ 15 The witnesses described the make, model, and year of their motorcycles and stated that those motorcycles were stolen. Their respective vehicle registration numbers were furnished through police reports, registration cards, and certificates of title, without objection. Once this information was established, Detective Hughes's testimony indicated that motorcycle frames and engines found at Appellant's business matched those descriptions and bore corresponding identification numbers. Although Detective Hughes relied on some hearsay statements from police reports to confirm that property found at Appellant's business had been reported stolen, defense counsel never raised a hearsay objection. Thus, the trial court was free to believe all, part, or none of Detective Hughes's testimony. *See Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976) (when hearsay is admitted without objection, it may be given its natural probative effect as if it were legally admissible).

■ ¶ 16 Appellant also contends that his conviction for receiving stolen property cannot stand because the Commonwealth failed to prove that he "intentionally received, retained or disposed of movable property knowing that it had been stolen or believing that it had been stolen." Appellant's brief at 26. A careful review of the record reveals otherwise.

■ ¶ 17 "[A] permissible inference of guilty knowledge may be drawn from the unexplained possession of recently stolen goods without infringing upon an accused's right of due process or his right against self-incrimination, as well as other circumstances, such as the accused's conduct at the time of arrest." *Commonwealth v. Williams*, 468 Pa. 357, 365–366, 362 A.2d 244, 248–249 (1976) (citations omitted). Nonetheless, the mere possession of stolen property is insufficient to prove guilty knowledge, and the Commonwealth must introduce other evidence, which can be either circumstantial or direct, that demonstrates that the defendant knew or had reason to believe that the property was stolen. *Commonwealth v. Matthews*, 429 Pa.Super. 291, 632 A.2d 570, 571 (1993). This additional evidence can include the nature of the goods, the quantity of the goods involved, the lapse of time between possession and theft, and the ease with which the goods can be assimilated into trade channels. *Williams*, 468 Pa. at 366 n. 7, 362 A.2d at 249 n. 7. Further, whether the property has alterations indicative of being stolen can be used to establish guilty knowledge. *Id.* Finally, even if the accused offers an explanation for his possession of stolen property, the trier of fact may consider the possession as

unexplained if it deems the explanation unsatisfactory. *Id.*

¶ 18 In the instant case, after Appellant testified that either he or his employees check the vehicle identification numbers and serial numbers on goods purchased for resale, he conceded on cross-examination that serial numbers on at least three engines found in his shop visibly had been altered. Furthermore, with regard to one of the stolen motorcycles seized by police, Appellant could not say where he obtained it and testified that he made no effort to check its identification numbers.

¶ 19 Appellant insinuated that former employee Paul Dorward was responsible for the altered serial numbers because Mr. Dorward allegedly purchased the metal punch stamps seized by police and was stealing from Appellant. He also stated that he unknowingly obtained some of the stolen goods by purchasing them at salvage operations, auctions, and from customers. However, the factfinder was free to disbelieve this testimony and consider Appellant's explanation of his possession of stolen goods unsatisfactory.

¶ 20 We find that sufficient circumstantial evidence existed for the trier of fact to conclude that Appellant received stolen goods knowing that they were stolen. This evidence includes: 1) Appellant's admission that he or an employee checked engine serial numbers and some of these numbers visibly were altered on engines found at Appellant's shop; 2) the existence of the six sets of metal stamps on Appellant's business premises; 3) the fact that such a significant number, sixteen, of stolen items were found at Appellant's business; and 4) the stolen gas tank located on Appellant's premises and under his control that had been boxed and marked for seizure was missing when police returned to retrieve it. *See Commonwealth v. Robbins*, 436 Pa.Super. 177, 647 A.2d 555

(1994) (evidence sufficient to sustain receiving stolen property conviction).

¶ 21 Appellant next contends that the guilty verdict rendered on the charges of receiving stolen property was against the weight of the evidence because the Commonwealth failed to prove that the seized items were, in fact, stolen. Once again, we observe that Appellant never attempted to refute the allegation that the seized goods were stolen at trial. We again emphasize that his strategy at trial was to not contest evidence establishing that the items were stolen but to defend on the basis of a lack of knowledge of the goods' stolen nature. In conformity with that strategy, Appellant did not lodge hearsay objections when documents were used to establish that the goods were stolen. Now, he contends that his convictions are against the weight of the evidence, due to the introduction of that improper hearsay information. *See* Appellant's brief at 25–26.

¶ 22 A challenge to the weight of the evidence is addressed to the sound discretion of the trial court. *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000). Absent an abuse of discretion, we will not disturb the trial court's ruling. *Commonwealth v. Lilliock*, 740 A.2d 237 (Pa.Super.1999). A new trial should be awarded only when the verdict is so contrary to the evidence as to shock one's sense of justice. *Id.* Upon reviewing Appellant's challenges to the sufficiency and weight of the evidence, the trial court concluded that it was convinced beyond a reasonable doubt that the items seized by police at Sport Cycle and Salvage were stolen "based upon the testimony of the various [Commonwealth] witnesses." Trial Court Opinion, 6/21/01, at 8. Indeed, as we have noted twice previously, the evidence proffered by the Commonwealth to establish that the motorcycles and engines

found at Appellant's shop were stolen went into evidence without objection. As a result, we fail to see how the verdict handed down by the trial court could have been contrary to the weight of the evidence.

¶ 23 Appellant next argues that the trial court erred when it found that Appellant knowingly and voluntarily waived his right to a jury trial after a defective on-the-record colloquy was conducted prior to trial. The record indicates that on September 19, 1999, trial counsel informed the court that Appellant requested a bench trial. Trial counsel presented the court with an executed waiver-of-jury-trial form signed by Appellant and stated that Appellant read and understood the document. Trial counsel also executed the waiver form, thereby verifying that he had fully advised his client of the content and meaning of the waiver-of-jury-trial statement and that he and his client had discussed the decision to forego a jury trial. The waiver form signed by Appellant stated, in relevant part:

> I understand and my lawyer has explained to me that if I plead not guilty and choose to have a trial before a judge and jury: The jury would consist of 12 people who live in Delaware County or upon cause shown by me some other county in Pennsylvania. I have the right to take part in selecting the jury who would hear my case.

¶ 24 After the form was discussed, the following colloquy took place:

BY THE COURT:

Q: Mr. Foreman, you are aware that you do have a right to trial by jury. If you have a trial by jury you cannot be convicted unless all twelve jurors agree that the Commonwealth has proven its case beyond a reasonable doubt.

A. Yes, your Honor.

Q. But if you elect to have a trial before a judge or me as the judge, then it's only my decision that is going to be determinative. Of course, the Commonwealth has to convince me beyond a reasonable doubt, too. But it's going to be my decision as opposed to that of twelve people. Do you understand me?

A. Yes, your Honor.

Q. And knowing that it's still your desire to have this case tried as a non-jury case? Okay. If I can have the waiver of jury trial form.

BY TRIAL COUNSEL:

A. Thank you, your Honor.

N.T., 9/29/99, at 5–6.

¶ 25 We note that the jury-trial waiver form was duly executed by Appellant and made part of the official court record. Notwithstanding the written waiver, Appellant now asserts that he is entitled to a new trial because the trial court failed to inform him during the colloquy that the jury would be selected from members of the community and that Appellant would be permitted to participate in jury selection. Additionally, Appellant contends that his waiver was not knowing, voluntary, or intelligent because, contrary to trial counsel's representations made in Appellant's presence, he did not read the waiver form. Finally, Appellant asserts that defense counsel coerced him into requesting a bench trial.

¶ 26 Waiver of the right to a jury trial is governed by Pa.R.Crim.P. 620:

> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and

such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge and the defendant's attorney as a witness.

■ ¶ 27 The colloquy conducted by the trial court must apprise the defendant of the following essential elements of a trial by jury: that the jury would be selected from members of the community, that the verdict must be unanimous, and that the defendant would be allowed to participate in the selection of the jury. *Commonwealth v. Shablin*, 362 Pa.Super. 289, 524 A.2d 511 (1987). Our Supreme Court ruled that in deciding whether a jury waiver is valid, we must employ a totality of the circumstances analysis which examines, among other things, the extent to which counsel and client discussed the waiver. *Commonwealth v. De-George*, 506 Pa. 445, 449, 485 A.2d 1089, 1091 (1984). Therefore, we are compelled to go beyond the colloquy and examine the record as a whole and the circumstances surrounding Appellant's waiver of his right to a jury trial in order to determine whether that waiver was voluntary. *Id.*

¶ 28 Applying the totality of the circumstances test in the instant case, we find that Appellant's waiver was knowing, voluntary, and intelligent. A waiver-of-jury-trial form signed by Appellant and all necessary parties was presented to the trial court and made part of the record. Trial counsel stated that Appellant read the document and indicated that he wanted a bench trial. Appellant was present when this representation was made to the court, and he voiced no objection to its accuracy. The court then conducted an on-the-record colloquy during which Appellant was told that he had the right to be tried by a jury composed of twelve individuals who had to agree unanimously that the Common-

wealth had proven its case beyond a reasonable doubt. Appellant stated that he understood this right and requested a bench trial.

¶ 29 Although Appellant now claims that he did not read the waiver before executing it, the record reveals that Appellant stood by and said nothing while defense counsel told the trial court the opposite. Furthermore, with regard to Appellant's claim that his waiver was the result of coercion on the part of defense counsel, we have held previously that it is the defendant, not trial counsel, who ultimately decides whether or not to waive the right to trial by jury. *See Commonwealth v. Williams*, 310 Pa.Super. 501, 456 A.2d 1047 (1983). Appellant indicated on the record *his* desire to forego a jury trial. Given these facts, we agree with the trial court's determination that Appellant's waiver was knowing, voluntary, and intelligent.

■ ¶ 30 Appellant next contends that the trial court erred when it admitted police reports and testimony pertaining thereto into evidence absent testimony regarding how the reports were made, obtained, and prepared. Again, Appellant's argument is twofold. First, with respect to the nine Commonwealth witnesses who testified that their motorcycles were stolen, Appellant argues that the trial court abused its discretion when it permitted those witnesses to read their vehicle identification numbers into evidence from unauthenticated police reports. Second, Appellant asserts that the trial court abused its discretion when it permitted Detective Hughes to testify regarding unauthenticated police reports which indicated that the nine witnesses' motorcycles had been reported stolen. We find this issue to be waived.

¶ 31 Although Appellant suggests that the unauthenticated police reports did not satisfy the test for admission set forth in Pa.R.E. 803(6) "Hearsay Exceptions; Availability of Declarant Immaterial/Records of Regularly Conducted Activity," and the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108, he ignores the fact that trial counsel never objected to the reports and testimony at issue. In the absence of an appropriate objection made when the evidence is proffered at trial, the issue is not preserved for appeal and the applicable rule of evidence is waived. *See Commonwealth v. Farquharson, supra.* As a result, we find Appellant's claim of error regarding the admission of hearsay police reports and testimony to be waived.

¶ 32 Appellant's three final contentions on appeal relate to ineffective assistance of trial counsel. In order for Appellant to prevail on each claim of ineffective assistance of counsel, he must show (1) the underlying claim is of arguable merit; (2) the particular course of conduct of counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced the defendant in such a way that the outcome at trial would have been different. *See Commonwealth v. Howard,* 732 A.2d 1213 (Pa.Super.1999).

¶ 33 Appellant first argues that trial counsel was ineffective for failing to object to hearsay testimony elicited by the Commonwealth. As previously noted, Appellant maintains that police reports, computer printouts, and vehicle registrations used to establish the vehicle identification numbers and serial numbers of stolen motorcycles and engines were inadmissible hearsay. Appellant suggests that trial counsel had no reasonable basis for failing to object to the introduction of these documents. Similarly, Appellant contends that trial counsel failed to effectively cross-ex-amine Commonwealth witnesses whose testimony was derived from these documents insofar as they lacked personal knowledge of vehicle identification numbers and engine serial numbers contained in them. Therefore, Appellant argues, he was prejudiced by trial counsel's conduct because the information furnished by the documents ultimately formed the basis for his convictions. Although Appellant's underlying claim may have merit, we find that there was a reasonable basis for trial counsel's course of conduct in the instant case. As a result, this claim must fail.

¶ 34 Appellant was granted a post-conviction evidentiary hearing where trial counsel was questioned at length about his representation of Appellant. Trial counsel stated that he and Appellant attempted to show that Appellant lacked the state of mind necessary to sustain a conviction on any of the charges. *See* N.T., 2/2/01, at 9, 37–38. To this end, counsel sought to exploit the fact that a significant amount of time had passed since many of the seized items were reported stolen in order to show that Appellant, who carried a large inventory, did not acquire those items knowing they were stolen. *Id.* at 9. Similarly, trial counsel attempted to refute the notion that the thefts of the subject motorcycles were somehow related, by pointing out that the nine motorcycle theft victims who testified at Appellant's trial lived in various geographic locations around the Commonwealth. *Id.* at 9. Since the documents at issue did not prove guilty knowledge and may have been admissible under statutory hearsay exceptions, counsel reasoned that objecting to them simply would lengthen the duration of Appellant's trial. *Id.* at 37.

¶ 35 Upon reviewing the record, we find that there was a reasonable basis for trial counsel's course of conduct in the instant case. Trial counsel did not raise a hearsay

objection when the various records were introduced because he knew that the Commonwealth could overcome such objections through use of statutory hearsay exceptions. In addition, trial counsel stated that he saw no reason to consistently point out that Commonwealth witnesses lacked personal knowledge of vehicle identification numbers and engine serial numbers because his strategy was to show that Appellant lacked knowledge that his shop contained stolen property. As this strategy was reasonably designed to effectuate Appellant's interests, this claim of ineffective assistance of counsel must fail.

■ ¶ 36 Appellant also claims ineffective assistance of counsel with regard to trial counsel's failure to prosecute a petition for return of property seized at Appellant's business that "could have exculpated Appellant." Appellant's brief at 31. As we find that there is no merit to the underlying claim, we reject this argument.

¶ 37 The record indicates that police searched Appellant's business a second time on February 3, 2000, and seized documents that were marked at trial as Commonwealth's exhibit C–19. During cross-examination, Appellant stated that documents seized by police could have included inventory receipts that might exculpate him. Appellant then stated that these documents were not made available to him, despite his formal demand to have them returned. The Commonwealth asserted that it did not possess exculpatory documents, and Appellant made no attempt to examine Commonwealth's exhibit C–19. No further mention of exculpatory documents was made at trial.

■ ¶ 38 It is apparent from the record that Appellant never told trial counsel that the police possessed potentially exculpatory documents before Appellant raised the issue. Furthermore, Appellant himself is not certain that the documents to which he referred are exculpatory in nature. A post-conviction evidentiary hearing was held on the issue of trial counsel's alleged ineffectiveness for failure to prosecute the petition for return of property, but the court found that the record did not support Appellant's claim that he informed trial counsel that the police possessed potentially exculpatory documents. Accordingly, there is nothing in the record to substantiate Appellant's present claim that trial counsel was ineffective for failing to prosecute a petition for return of property that might have uncovered exculpatory material. Trial counsel cannot be ineffective for failing to pursue a meritless claim. *Commonwealth v. Thomas*, 560 Pa. 249, 744 A.2d 713, 716 (2000).

■ ¶ 39 We now address the issue raised on cross-appeal. The Commonwealth argues that the trial court erred when it found that trial counsel was ineffective for failing to object to Trooper Tempinski's testimony on the basis that it failed to meet the *Frye* standard. It argues that the trial court should not have granted Appellant's post-sentence motions for acquittal on twelve counts. We agree.

■ ¶ 40 In *Commonwealth v. Topa*, 471 Pa. 223, 369 A.2d 1277 (1977), our Supreme Court defined the foundation required for the admission of expert testimony in this Commonwealth as follows:

Admissibility of the evidence depends upon the general acceptance of its validity by those scientists active in the field to which the evidence belongs. 'Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recog-

nized scientific principle or discovery, *the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.'* Frye v. United States, 54 App.D.C. 46, 293 F. 1013, 1014 (1923) (emphasis supplied).

*Id.* at 231, 369 A.2d at 1281.

■ ¶ 41 Applying *Topa, supra,* this Court has previously stated that tool mark identification is a scientifically recognized area for expert testimony in this Commonwealth. *See Commonwealth v. Graves,* 310 Pa.Super. 184, 456 A.2d 561 (1983); *see also Commonwealth v. Hitchon,* 379 Pa.Super. 136, 549 A.2d 943 (1988) (expert testimony regarding tool mark analysis supported appellant's conviction for possession of a prohibited weapon); *Commonwealth v. Ellis,* 354 Pa.Super. 11, 510 A.2d 1253 (1986) (trial court did not err when it qualified police laboratory chemist as an expert in tool mark analysis after inquiring as to his qualifications). As a result, we agree that the trial court erred in determining that a *Frye* objection would have been meritorious and that counsel was ineffective for failing to make such an objection. Hence, the judgment of acquittal was entered erroneously.

¶ 42 We reverse that portion of the trial court's order granting in part Appellant's post-sentence motions for judgment of acquittal and remand for re-sentencing. In all other respects, the judgment of sentence is affirmed.

¶ 43 Reversed and remanded; jurisdiction relinquished.

¶ 44 President Judge Emeritus STEPHEN J. McEWEN, Jr. files a Concurring Opinion.

McEWEN, P.J.E., concurring.

¶ 1 The author of the majority opinion has undertaken a careful and persuasive analysis of appellant Foreman's arguments, and I hasten to join in the rejection of his claims. However, while I likewise agree with the majority in its decision to uphold the Commonwealth's cross-appeal, I do so on a different basis.

¶ 2 Since Foreman's trial counsel did not challenge the police officer's testimony on *Frye/Topa* grounds, the burden was on post-trial counsel to demonstrate that this failure constituted ineffectiveness. Post-trial counsel was thereby obliged, at a minimum, to show that Foreman was prejudiced by trial counsel's inaction. *See: Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). During the post-trial hearing, appellant offered no evidence that the Commonwealth's expert's methodology was unscientific, nor that an objection to his testimony would have or should have been sustained. Hence, in my view, the trial judge had no basis upon which to find that trial counsel was ineffective.

¶ 3 Nonetheless, as earlier mentioned, I join in the ruling of the majority.