**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Charles M. WASKOVICH, Appellant.**

Superior Court of Pennsylvania.

Submitted May 20, 2002.
Filed Aug. 6, 2002.

David R. Crowley, Public Defender, Bellefonte, for appellant.

J. Karen Arnold, Asst. Dist. Atty., Bellefonte, for Com., appellee.

BEFORE: STEVENS, BENDER, and MONTEMURO *, JJ.

* Retired Justice assigned to the Superior Court.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Centre County following Appellant's conviction on the charges of neglect of care of a dependent person (serious bodily injury), 18 Pa.C.S.A. § 2713, neglect of care of a dependent person (bodily injury), 18 Pa.C.S.A. § 2713, and recklessly endangering another person, 18 Pa.C.S.A. § 2705. On appeal, Appellant contends that (1) the evidence was insufficient to sustain Appellant's convictions for neglect of care of a dependent person since the evidence did not establish that Appellant was a "caretaker" or contractually bound to care for the victim, (2) the verdict was against the weight of the evidence, and (3) the trial court erred in precluding Appellant from representing himself during trial.[1] We affirm.

¶ 2 Appellant's first claim is that the evidence was insufficient to sustain his convictions for neglect of care of a dependent person. "The law is settled in this Commonwealth that in reviewing the sufficiency of the evidence, the appellate court is required to review all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, ... [as verdict winner]." *Commonwealth v. Earnest*, 386 Pa.Super. 461, 563 A.2d 158, 159 (1989) (citation omitted). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Sanders*, 426 Pa.Super. 362, 627 A.2d 183, 185 (1993) (citation omitted). Although a conviction must be based

1. We have renumbered Appellant's issues for the sake of effective appellate review.

on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Badman,* 398 Pa.Super. 315, 580 A.2d 1367, 1372 (1990) (citation omitted).

¶ 3 Using the aforementioned standard, the record discloses the following: Appellant, his wife, and son, who is legally blind, moved to State College, Pennsylvania so that Appellant's son could attend the Pennsylvania State University. In 1992, Appellant's son moved into the home of Kenneth B. Andrews, an elderly gentleman who lived alone. N.T. 7/12/00 at 392. It was agreed that the son would pay Mr. Andrews $300.00 per month in rent. N.T. 7/12/00 at 392. During this time, Appellant often proposed to Mr. Andrews that Appellant and his wife move into Mr. Andrews' home, and, in return, Appellant would provide various services for Mr. Andrews. At some point in 1993, Mr. Andrews permitted Appellant and his wife to move into the home. N.T. 7/12/00 at 401. In exchange, the parties agreed that Appellant and his wife's care of Mr. Andrews would be valued at $7.00 per hour, which would be applied to the purchase price of Mr. Andrews' house, which the parties' agreed was $90,000.00. N.T. 7/12/00 at 401. Also, the parties agreed that the value of $300.00 for rent would not be paid directly to Mr. Andrews, but rather, it would be applied as equity in Mr. Andrews' residence. In October of 1996, the parties executed a new agreement, which contained substantially the same terms, except that the agreement specifically stated that Appellant and his wife would not be able to give nursing, doctor, or other health care services to Mr. Andrews.

¶ 4 In January of 1999, the Office of Aging received reports that Appellant was mistreating Mr. Andrews. The Office of Aging contacted the district attorney's office, which then contacted the State College Police Department. As a result of the police department's investigation, Appellant was arrested and proceeded to a jury trial.

¶ 5 During trial, Khristina Reede, a registered nurse who was employed by Brookline Home Care and Hospice, testified that she visited Mr. Andrews in his home in January and February of 1998. N.T. 7/11/00 at 124. Nurse Reede testified that Mr. Andrews was not mobile, he had difficulty moving his arms, and he suffered from bedsores. N.T. 7/11/00 at 125. Since Mr. Andrews was not able to speak clearly, Nurse Reede asked Appellant about Mr. Andrews' family, and Appellant refused to answer. N.T. 7/11/00 at 129. Nurse Reede testified that Appellant was uncooperative as to Nurse Reede visiting Mr. Andrews and that he insisted she come only at certain scheduled times. N.T. 7/11/00 at 131. Nurse Reede specifically testified that Appellant introduced himself as Mr. Andrews' sole caregiver and explained the circumstances surrounding his presence in Mr. Andrews' home. N.T. 7/11/00 at 132, 139–140. Nurse Reede indicated that she informed Appellant that Mr. Andrews was entitled to additional in-home medical assistance through Medicare, but Appellant refused any additional services, indicating that he wanted control over who entered the home. N.T. 7/11/00 at 135–136.

¶ 6 Grace Black–Wood testified that she was a life-long friend of Mr. Andrews, and that she often cooked him meals. After Appellant and his family moved into Mr. Andrews' home, Ms. Wood took meals to Mr. Andrews, and Appellant told her to stop doing so because it affected Mr. Andrews' bowels. N.T. 7/11/00 at 154. She testified that on one occasion she visited Mr. Andrews and discovered that his refrigerator was empty. N.T. 7/11/00 at 154.

¶ 7 Linda L. Fryer, a registered nurse, testified that she evaluated and assisted Mr. Andrews in January of 1999. N.T. 7/11/00 at 167. She discovered severe bedsores on Mr. Andrews' hips, N.T. 7/11/00 at 175, and called an ambulance. N.T. 7/11/00 at 177. Ms. Fryer indicated that Appellant accompanied Mr. Andrews to the hospital. N.T. 7/11/00 at 177. Mr. Andrews subsequently died due to pneumonia and severe infection related to bedsores.

¶ 8 Cathy Saint Andrews testified that she is a caseworker for the Centre County Office of Aging and that she was assigned to Mr. Andrews' case. She testified that she spoke to Mr. Andrews in January of 1999 while he was in the hospital and that he seemed to be in pain. N.T. 7/11/00 at 186. The caseworker indicated that she also spoke to Appellant, who indicated that he provided care services for Mr. Andrews in lieu of paying rent. N.T. 7/11/00 at 191. Ms. Saint Andrews testified Appellant indicated that taking care of Mr. Andrews was difficult because Mr. Andrews was uncooperative and spiteful. N.T. 7/11/00 at 191–192.

¶ 9 During his testimony, Appellant admitted the following: While living with Mr. Andrews, Appellant and his wife took care of the property and Mr. Andrews. N.T. 7/12/00 at 400. In the beginning, the couple would perform household chores such as going to the store for Mr. Andrews and mowing the lawn. N.T. 7/12/00 at 400. However, at some point, Mr. Andrews' health deteriorated, and he required additional care. Appellant took Mr. Andrews to visit doctors, N.T. 7/12/00 at 405, helped Mr. Andrews take a bath, N.T. 7/12/00 at 409, 412, changed Mr. Andrews' dressing, N.T. 7/12/00 at 411, 416, and got out of bed

during the night if Mr. Andrews called for help, N.T. 414–415.

¶ 10 At the conclusion of all testimony, the jury convicted Appellant of neglect of care of a dependent person under 18 Pa. C.S.A. § 2713 (serious bodily injury and bodily injury) and recklessly endangering another person under 18 Pa.C.S.A. § 2705. Appellant was sentenced to an aggregate of one hundred and sixty-one days to twenty-three and one-half months in prison. Appellant filed a post-sentence motion in which he alleged that the trial court erred in refusing Appellant's request to proceed *pro se*, the evidence was insufficient to prove that Appellant was Mr. Andrews' caretaker, and the verdict was against the weight of the evidence. The motion was denied, and this timely appeal followed.[2]

¶ 11 Appellant contends that the evidence was insufficient to sustain his convictions for neglect of care of a dependent person. Specifically, Appellant contends that the Commonwealth failed to prove that he was a "caretaker" as is required under 18 Pa.C.S.A. § 2713. We disagree.

¶ 12 Section 2713 provide, in pertinent part, the following:

(a) **Offense defined.**—A caretaker is guilty of neglect of a care-dependent person if he:

(1) Intentionally, knowingly or recklessly causes bodily injury or serious bodily injury by failing to provide treatment, care, goods or services necessary to preserve the health, safety or welfare of a care-dependent person for whom he is responsible to provide care.

(f) **Definitions.**—As used in this section, the following words and phrases

2. The trial court did not order Appellant to file a Pa.R.A.P.1925(b) statement, and no such statement was filed. The trial court filed an opinion.

shall have the meanings given to them in this subsection:

"Caretaker." Any person who:

\* \* \*

(3) has an obligation to care for a care-dependent person for monetary consideration in the settings described in paragraph (1) or in the care-dependent person's home.

(emphasis in original).

¶ 13 In the case *sub judice*, we conclude the evidence was sufficient to establish that Appellant was Mr. Andrews' caretaker for Section 2713 purposes. For example, Appellant admitted that he and his wife signed a contract with Mr. Andrews whereby Appellant and his wife would provide care for Mr. Andrews at the rate of $7.00 per hour, which would be applied to the purchase price of Mr. Andrews' home. Appellant admitted during his testimony that he took care of Mr. Andrews. While Appellant indicated that, in the beginning, the care consisted of performing basic household duties (such as shopping and mowing the lawn), he admitted that, as Mr. Andrews' health deteriorated, Appellant performed health-related duties (such as taking Mr. Andrews to the doctor, giving him a bath, changing his dressing, and attending to him during the night). Nurse Reede testified that Appellant introduced himself as Mr. Andrews' sole caregiver, Appellant controlled Nurse Reede's visitation of Mr. Andrews, and Appellant refused additional services for Mr. Andrews' benefit. Grace Black–Wood testified that Appellant controlled what Mr. Andrews would eat, and Nurse Fryer testified that Appellant accompanied Mr. Andrews to the hospital in January of 1999. Finally, Ms. Saint Andrews testified that Appellant told her that he provided care for Mr. Andrews in lieu of rent.

¶ 14 We agree with the trial court that the evidence established that Appellant had a monetary interest in caring for Mr. Andrews, that Appellant had an obligation to care for Mr. Andrews, and that such care occurred in Mr. Andrews' home. We note that the fact the parties' October 1996 contract indicated that Appellant and his wife would not provide nursing, doctor, and other health care services does not alter our conclusion. However, Appellant and his wife chose to undertake such duties in exchange for an equitable interest in Mr. Andrews' home. As such, we specifically find Appellant was a "caretaker" under 18 Pa.C.S.A. § 2713.

■ ¶ 15 Appellant's next claim is that the verdict was against the weight of the evidence with regard to his convictions for neglect of care of a dependent person. Specifically, Appellant contends that the existence of the parties' contract limiting the services given to Mr. Andrews, which was voluntarily entered, established the affirmative defense found in 18 Pa.C.S.A. § 2713(e)(2). We disagree.

A challenge to the weight of the evidence is addressed to the sound discretion of the trial court. Absent an abuse of discretion, we will not disturb the trial court's ruling. A new trial should be awarded only when the verdict is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Foreman,* 797 A.2d 1005, 1013 (Pa.Super.2002) (citations omitted).

¶ 16 Subsection 2713(e)(2) provides the following:

**(e) Treatment in conformance with care-dependent person's right to accept or refuse services.**—A caretaker or any individual or facility may offer an affirmative defense to charges filed pursuant to this section if the caretaker, individual or facility can demonstrate through a preponderance of the evidence

that he alleged violations result directly from:

\* \* \*

(2) the caretaker's, individual's or facility's lawful compliance with the care-dependent person's written, signed and witnessed instructions, composed when the care-dependent person is competent as to the treatment he wishes to receive; . . . .

(emphasis in original).

¶ 17 Assuming, *arguendo*, that the parties' October 1996 agreement meets the requirements of Subsection 2713(e)(2), it is clear that the parties mutually altered the agreement. At some point, Mr. Andrews asked for health-related services, and Appellant and his wife complied, charging Mr. Andrews $7.00 per hour which was applied to the purchase price of Mr. Andrews' house. As such, we conclude that the verdict does not shock this Court's sense of justice such that a new trial is required.

¶ 18 Appellant's final contention is that the trial court erred in precluding Appellant from representing himself during trial.

While it is well settled that a criminal defendant has the right to proceed *pro se* at trial, the right of self-representation is not absolute. This right may be limited or waived, for instance, if it is not raised before trial.

In justifying the need to timely raise the right to self-representation, courts have recognized, among other things, the need to minimize disruptions, to avoid inconvenience and delay, to maintain continuity, and to avoid confusing the jury. In light of these objectives, when the request for self-representation is asserted after "meaningful trial proceedings have begun", the granting of the right rests within the trial judge's discretion.

\* \* \*

We agree with and adopt the view expressed by the following United States Courts of Appeal that meaningful trial proceedings have begun once the process of jury selection is commenced. *See U.S. v. Lawrence,* 605 F.2d 1321 (4th Cir.1979); *Chapman v. U.S.,* 553 F.2d 886 (5th Cir.1977). A defendant's trial strategy can influence the jurors selected, and the jurors selected can determine trial strategy. The selection process is a "meaningful trial proceeding" which may have serious ramifications on the determination of guilt or innocence.

*Commonwealth v. Vaglica,* 449 Pa.Super. 188, 673 A.2d 371, 373 (1996) (citations omitted).

¶ 19 In the case *sub judice*, Appellant's formal request for self-representation occurred just minutes before trial was scheduled to begin. The jury had already been selected but was not yet sworn.[3] "Therefore, the decision to allow Appellant to proceed *pro se* was within the trial court's discretion." *Vaglica,* 673 A.2d at 373. When exercising its discretion, the trial court in this case considered, *inter alia,* Appellant's reasons for the self-representation, the quality of Appellant's counsel, Appellant's knowledge of the charges lodged against him, Appellant's knowledge

3. It appears that Appellant may have telephoned the trial court in order to determine how to proceed *pro se* sometime prior to July 11, 2000, when Appellant made his formal request on the record. However, it appears that the request was made following the selection of the jury. In any event, assuming, *arguendo*, that Appellant's request was not untimely made, we would still conclude that the trial court did not err in precluding Appellant from proceeding *pro se*. It is clear from the record that Appellant desired to proceed with new counsel in front of a judge, and that he did not actually wish to proceed *pro se*.

of the possible sentences he could receive, and Appellant's knowledge of his possible defenses. During questioning, it became clear that Appellant did not actually want to represent himself. N.T. 7/11/00 at 10–12. Rather, Appellant desired new counsel and a bench trial. N.T. 7/11/00 at 10–14. "Given that Appellant's desire to proceed *pro se* was questionable and designed to seek delay of the trial, the trial court properly exercised its discretion in denying Appellant's untimely request for self-representation." *Vaglica*, 673 A.2d at 373.

¶ 20 Affirmed.