J-S25019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TODD EDWARD SHORT | |
| Appellant | No. 985 WDA 2015 |

Appeal from the Judgment of Sentence June 11, 2015
In the Court of Common Pleas of Somerset County
Criminal Division at No(s): CP-56-CR-0000162-2013
CP-56-CR-0000210-2013

BEFORE: FORD ELLIOTT, P.J.E., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                          **FILED APRIL 06, 2016**

Appellant, Todd Edward Short, appeals from the June 11, 2015 aggregate judgment of sentence of 9 to 23 months' incarceration, followed by 2 years of probation, imposed after a jury convicted him of two counts of receiving stolen property.[1]  After careful review, we affirm.

The trial court detailed the facts presented at trial as follows.

> The evidence heard by the Jury clearly established that [Appellant] was in possession of two shot guns which had been stolen from one residence and one hand gun which had been stolen from a different residence on December 20, 2012.  In addition, the evidence clearly established that all three of these weapons were sold by [Appellant] at Gander

_____

[1] 18 Pa.C.S.A. § 3925(a).

Mountain, a sporting goods store, on January 1, 2013.

The crux of the Commonwealth's evidence on the issue of [Appellant's] knowledge that these weapons were stolen is the testimony of Joshwa [Slope,] who testified that he was charged as a Co-Defendant with [Appellant] in both cases, pled guilty to one count of Receiving Stolen Property in each case, and was sentenced to an aggregate of one to three years in prison. He stated that he met [Appellant] upon awakening after spending the night at the home of Christine Cox where his friend Doug Everhart was also staying and that both he and [Appellant] were going through withdrawal from heroin. He also related that "… it didn't take us long to start talkin' about – you know, getting well, which is using heroin." When asked what they planned to do, Slope stated

> We were trying to figure out how to get some money together. And I told him I had some guns at another friend's house. He didn't ask me where they came from; he told me he didn't want to know where they came from; and he said he could cover his ass if anything ever came back on him because he's – done it before.
>
> ***
>
> [Appellant] called around to a few local – I guess – I guess they'd be guns dealers, like sport shops, local sports shops. Everybody was closed because it was New Year's Day, the holiday. So we're callin' everywhere. Gander Mountain picked up. They said they were open. So we went to pick them up and we drove down there.
>
> ***
>
> He agreed to sell them for me and I agreed to give him about $250 for doin' it.

Slope testified that they left in [Appellant's] car, drove to the home of Lindsay Straka, he entered without [Appellant], [and] returned to the car carrying three cases which he placed in the rear seat after showing [Appellant] at least one of the weapons. According to Slope, when they arrived at Gander Mountain, he stayed in the car and [Appellant] took the guns into the store. After about 45 minutes, Slope entered the store because he wondered what was taking so long, [Appellant] gave him a sign with his fingers which Slope interpreted as indicating it would take another 5 minutes, and Slope then returned to the car and waited. When [Appellant] returned to the car he handed Slope $1,000, Slope returned $250 to [Appellant] and they returned to another home in Somerset where [Appellant] purchased two bundles of heroin with funds each man provided and proceeded to the Straka house and used the drugs together. Slope admitted that when he was first questioned by police regarding this incident, he claimed that the guns belonged to [Appellant] and that they used the money to buy heroin in the Johnstown area.

In response, the following exchange occurred.

Q. So, Josh, tell the jury why they should believe you now?

A. Well, I'm not going to say that nobody should believe me, but I'm a State prisoner. I'm a convicted felon. I guess you'd say that I'm probably not that easy to trust, but – but I have – nothing to gain from this. I'm already serving my sentence that I got for this crime. I'm just trying to make amends where possible and tryin' to do the right thing.

On cross-examination, Slope admitted that he didn't have a photo identification because he never bothered to get one after he lost his driver's license in 2010 following his conviction on other charges. Slope testified that he bought the weapons "off of somebody else. I don't know where he got them from. I knew they were stolen." When asked how

- 3 -

he knew they were stolen, he testified "the kid I bought them off of told me they were hot, which means they're – it's not legal to have them. They're stolen." He also stated "I was going to sell that pistol, but I – I couldn't sell those shotguns to a drug dealer. They don't want it. They can't use it." In addition, when asked if he had ever involved another person in selling firearms, he admitted that he had and that, even if he had a driver's license, he probably would have involved [Appellant] in the transaction because "it's kind of like a proxy. There's no – it's harder to trace it back to me. I was tryin' to stay out of jail." On that same issue, in response to a question regarding using another as a "proxy" in such a transaction as a means of protecting himself, Slope stated

> not so much as it was in this case because this was selling to a retailer. Whenever I sell to another criminal, like a drug dealer, the only time I would use a proxy in that case would be if I didn't know the guy that he's selling to.

On direct, [Appellant] testified that Slope

> asked me to drive him to Gander Mountain to sell these guns; and he offered me $200 to do it, which I said, all right, I would do it if the guns were legitimately his. I asked him several times. I asked him before I even left his – the trailer to go get the guns: Are these your guns? Yeah, they're my guns. My – grandparents gave them to me. They're Christmas gifts. The last couple of years, I've never used them.

He also stated

> I took him to Johnstown Gander Mountain; and at that time when we got down there, he had asked me to take them in and sell them because he didn't have an ID; and right there and then, I asked him again: Are these your guns? I told him flat out I'm not getting involved in any bullshit with stolen weapons. They're my guns. I wouldn't have come down

- 4 -

here if they weren't, and – you know, I trusted what he had to say.

On cross, when [Appellant] was asked to review the statement he had given to the police which was admitted as Commonwealth's Exhibit "A," the following exchange occurred between [Appellant] and the Assistant District Attorney

Q. Show me in that statement where it says you asked Joshwa Slope on repeated occasions who these guns belonged to?

A. Right here. (WITNESS INDICATING) First paragraph, third page.

Q. You – you read the section that you say it says what I just asked you in that question.

A. … "Approximately 9:00 A.M., Josh had told me that he had a few guns that he wanted to sell because he had had them for some time and never used them, probably would never ever have any use for them…I had asked him if the guns were in fact his. He took offense to the question and he said that they were."

Q. Okay. Where does it say in there, sir, that you asked on several occasions?

A. It doesn't say in this thing that I asked on several occasions but I did ask him several times about the guns.

\*\*\*

Q. Did you question the ownership of the guns?

A. Yes, at that time.

Q. You had doubts?

A. (NO AUDIBLE RESPONSE)

Q. Answer please?

A. I had a question about the ownership to know – that I wanted to know that they were his guns, yes.

Q. You had doubts?

A. No. I was reassured by him three different times that they were his guns.

Q. You didn't have doubts, but you asked him on repeated occasions?

A. Yes, same as you're asking me on repeated occasions right now.

Trial Court Opinion, 7/28/15, at 2-6 (internal citations omitted).

At the conclusion of the two-day trial, on March 27, 2015, the jury rendered its guilty verdicts. On June 11, 2015, the trial court sentenced Appellant to 9 to 23 months' incarceration, followed by 2 years of reporting probation at each count, to run concurrently. Appellant did not file a post-sentence motion. Appellant filed a timely notice of appeal on June 19, 2015.[2]

On appeal, Appellant presents a single issue for our review.

Whether or not the [trial c]ourt erred as a matter of law or abused its discretion by not granting [Appellant's] Motion for Acquittal when the Commonwealth presented no evidence to prove that [Appellant] knew the guns were stolen or knew the guns were probably stolen[?]

Appellant's Brief at 2.

_____

[2] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

- 6 -

We begin our analysis by noting that "[a] motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." **Commonwealth v. Hutchinson**, 947 A.2d 800, 805 (Pa. Super. 2008) (citation omitted), *appeal denied¸* 980 A.2d 606 (Pa. 2009).

> When considering a challenge to the sufficiency of the evidence, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner and determine whether the jury could find every element of the crime beyond a reasonable doubt. Any question of doubt is for the factfinder, unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. Additionally, this Court has observed that:
>
>> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

**Commonwealth v. Foreman**, 797 A.2d 1005, 1011 (Pa. Super. 2002) (internal citations and quotation marks omitted).

The receiving stolen property statute provides as follows.

### § 3925. Receiving stolen property

- 7 -

> **(a) Offense defined**.--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.
>
> **(b) Definition**.--As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

18 Pa.C.S.A. § 3925.

To obtain a conviction for receiving stolen property, "the Commonwealth must establish the following elements beyond a reasonable doubt: (1) the property was stolen; (2) the defendant was in possession of the property; and (3) the defendant knew or had reason to believe the property was stolen." **Foreman**, **supra**.

Instantly, Appellant concedes that the firearms were stolen and that he possessed them. The essence of Appellant's sufficiency argument is that the Commonwealth failed to establish that he knew the firearms were stolen because the "only witness to testify about the Appellant's knowledge with respect to the stolen guns was Slope." Appellant's Brief at 10. Appellant maintains that "Slope did not testify that Appellant knew the guns were stolen" and otherwise impugns Slope's credibility and testimony to support the jury's finding that Appellant was guilty beyond a reasonable doubt. **Id**. at 9-20. Upon review, we find Appellant's claim to be without merit.

With regard to the knowledge element necessary for a receiving stolen property conviction, we have explained as follows.

> [T]he mere possession of stolen property is insufficient to prove guilty knowledge, and the Commonwealth must introduce other evidence, which can be either circumstantial or direct, that demonstrates that the defendant knew or had reason to know that the property was stolen. This additional evidence can include the nature of the goods, the quantity of the goods involved, the lapse of time between possession of and theft, and the ease with which the goods can be assimilated into trade channels. … [E]ven if the accused offers an explanation for his possession of stolen property, the trier of fact may consider the possession as unexplained if it deems the explanation unsatisfactory.

*Foreman*, *supra* at 1012.

Upon review of the record, we agree with the trial court that the Commonwealth presented sufficient evidence to refute Appellant's claim that "the Commonwealth presented no evidence to prove that [Appellant] knew the guns were probably stolen." Appellant's Brief at 2. Our review confirms Mr. Slope's testimony that Appellant "didn't ask where [the guns] came from; he told [Mr. Slope] he didn't want to know where they came from; and he said that he could cover his ass if anything ever came back on him because he's – he's done it before." N.T., 3/26/15, at 104. Mr. Slope testified that he did not tell Appellant the firearms were stolen, but stated, "[Appellant] didn't ask me. He told me that he didn't want to know where they came from." *Id.* at 130-131. From these statements alone, the jury could reasonably infer that Appellant had reason to believe that the firearms had "probably been stolen." 18 Pa.C.S.A. § 3925(a). Although Mr. Slope

testified that he "was a heroin addict and would say and do anything to stay out of trouble," the jury as fact-finder was free to credit Mr. Slope's testimony and make inferences regarding Appellant's knowledge that the firearms were stolen. N.T., 3/16/15, at 127.

Notably, after Mr. Slope's testimony, Appellant's counsel verbally moved for judgment of acquittal, stating that Mr. Slope was "the only witness that was offered … that could testify as to whether [Appellant] knew or should have known" that the firearms were stolen. *Id.* at 139. Appellant's counsel assailed Mr. Slope's testimony, saying "[h]e never once told [Appellant] that the guns were stolen. With his memory, Your Honor, and, quite frankly, with his credibility, it just – it's hard to imag[ine] if he even remembers the transaction at all." *Id.* at 140. In denying the motion, the trial court explained as follows.

> I'm looking at the standard [jury] instruction on the third element [of receiving stolen property] and let me read this to you, it says: "Third, that the defendant received, retained or disposed of the property either knowing that it had been stolen or believing it had probably been stolen."
>
> And there is a – a separate phrase in brackets that reads this way: "As I already indicated, a defendant can be guilty of theft by receiving if" – in quotes – "he believes that the property had probably" – and that's in italics – "had been stolen." Close quote. "It is not necessary that the defendant know the details of the theft nor that he be certain that a theft in fact occurred."
>
> And I think that – that kind of harks back to my concept about – and I think I posited it as reckless disregard for the truth. If the – if the

statute read that: He believes the property had been stolen, I might be on [Appellant's] side on this argument, [Counsel]. But we're talking about two qualifications here: That he believes that it's probably stolen is a lot less certain; and it seems that it's probably stolen is a lot less certain; and it seems to me that the details of this transaction, certainly looking in the light most favorable to the Commonwealth, would be sufficient to allow the Jury to make that conclusion that [Appellant] should have believed that the property had probably been stolen.

Those things considered, having looked – looked at this again, I think I'm satisfied to deal with the Motion for Judgment of Acquittal on that basis and deny it.

*Id.* at 143-144.

The trial court's rationale is applicable to Appellant's sufficiency claim on appeal. Having reviewed the record, particularly the notes of testimony from the trial, mindful that we may not re-weigh the evidence and substitute our judgment for the jury as fact-finder, and viewing the evidence in the light most favorable to the Commonwealth as verdict-winner, we agree with the trial court that the Commonwealth presented sufficient evidence to support the jury's conclusion that Appellant knew, or had reason to believe, that the firearms probably were stolen.

Based on the foregoing, we conclude that Appellant's challenge to the sufficiency of the evidence underlying his convictions is without merit. We therefore affirm the trial court's June 11, 2015 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/6/2016</u>