J. S16041/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,     :     IN THE SUPERIOR COURT OF
    :     PENNSYLVANIA
         Appellee     :
    :
         v.     :
    :
MELISSA M. BUCANO,     :
    :
         Appellant     :     No. 2278 EDA 2015

Appeal from the PCRA Order June 29, 2015
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000781-2010

BEFORE: OTT, J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY DUBOW, J.:          **FILED APRIL 18, 2016**

Appellant, Melissa M. Bucano, appeals from the order entered in the Monroe County Court of Common Pleas denying her first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm on the basis of the PCRA court's opinion.

The relevant facts, as this Court summarized in our memorandum opinion disposing of Appellant's direct appeal, are as follows:

> [T]his case involve[s] an insurance fraud scheme perpetrated by Judi Grate ("Grate"), in which [Appellant] and her mother, Bianco Bucano ("Mother"), allegedly participated. The scheme involved submission of fraudulent claims for long[-]term care insurance benefits to various insurance companies. The Commonwealth presented evidence that [Appellant], using the names of other persons, completed and signed various forms requesting reimbursement of expenses allegedly paid by Grate for long[-]term care services.

* * *

> After a jury trial, [Appellant] was convicted of [insurance fraud (nine counts), criminal attempt to commit theft by deception (three counts), forgery (three counts), corrupt organizations (two counts), dealing in proceeds of unlawful activity, and criminal conspiracy.[1]]. [Appellant] filed a Motion for extraordinary relief, which the trial court denied. On July 18, 2012, the trial court sentenced [Appellant] to an aggregate prison term of forty-five to ninety months, and a consecutive probation term of two years.

*Commonwealth v. Bucano*, No. 2280 EDA 2012 (Pa. Super. filed June 24, 2013) (unpublished memorandum).

Appellant filed a direct appeal. In an unpublished memorandum, this Court affirmed Appellant's judgment of sentence on June 24, 2013. *Id*. Our Supreme Court denied allocatur on October 31, 2013. *Commonwealth v. Bucano*, 79 A.3d 1096 (Pa. 2013).

On December 18, 2013, Appellant filed a timely *pro se* PCRA petition, which was amended after appointment of counsel, alleging, *inter alia*, ineffective assistance of counsel during plea negotiations due to a breakdown in the attorney-client relationship following trial counsel's request to house Appellant separately from her mother in the county jail.

The PCRA court held an evidentiary hearing on July 15, 2014, at which trial counsel and Appellant testified. Trial counsel testified that his defense strategy had been to blame the mother for exercising undue influence over

---

[1] 18 Pa.C.S. § 4117(a)(2), (3), (5); 18 Pa.C.S. § 901(a); 18 Pa.C.S. § 4101(a)(3); 18 Pa.C.S. § 911(b)(1), (3); 18 Pa.C.S. § 5111(a)(1); 18 Pa.C.S. § 903(a)(1).

Appellant, which had forced Appellant to partake in the commission of the crimes. He stated that the mother's undue influence had continued during Appellant's and her mother's incarceration in the same cell in Monroe County Jail. Counsel testified that he and Appellant's prior counsel had engaged in extensive plea negotiations on Appellant's behalf, and had advised Appellant regarding the merits of several favorable plea offers on numerous occasions, but Appellant rejected all negotiated deals.[2]

In trial counsel's opinion, Appellant's mother had been pressuring Appellant to refuse all guilty pleas. Thus, believing the mother's influence was not in Appellant's best interest, trial counsel requested that the trial judge separate the two. "At trial counsel's request, the trial judge contacted the jail and asked that the two be separated." PCRA Court Opinion, dated 6/29/15, at 4. When counsel learned that in order to accommodate the request, the jail had placed Appellant in the Restricted Housing Unit ("RHU"), he requested that the trial court contact the jail to remove Appellant from RHU. Appellant then returned to the jail's general population. *See* N.T. PCRA, 7/15/14, at 17-25.

Appellant testified that she believed the RHU separation had interfered with the attorney-client relationship and plea negotiations because she

---

[2] Although Appellant entered a guilty plea in 2011, she subsequently withdrew the plea and negotiations thereafter continued.

"didn't trust anything that [trial counsel] had to say or to do with me so that relationship was already broken by finding all that out." *Id*. at 54.

On June 29, 2015, the PCRA court denied Appellant's Petition, concluding as follows:

> Finally, after observing [Appellant] testify, reviewing the record, and reading the submitted briefs, it is clear to this Court that [Appellant]'s allegation of ineffectiveness is based on "buyer's remorse," not mistrust of counsel. As noted, over the course of this case [Appellant] was presented with three favorable plea offers, all of which would have resulted in conviction of fewer crimes and a significantly shorter sentence than she received after going to trial and being convicted of twenty crimes. Even while asserting ineffectiveness, [Appellant] acknowledges that trial counsel informed her of the risks of going to trial, including the severe sentence she faced, and that he repeatedly encouraged her to accept the final plea. This is simply not a case where a defendant was misinformed by counsel of a favorable plea offer or prejudiced by counsel's deficient performance in advising her to reject the offer and go to trial. Rather, this is a case where a defendant was properly informed about a favorable plea offer, understood both the benefits of the plea and the risks of going to trial, and chose to go to trial. To use a colloquialism, by disregarding trial counsel's plea advice, interfering with his trial strategy, and going to trial, [Appellant] "rolled the dice[."] She lost. Regret for her decision does not allege, much less prove, ineffectiveness.

PCRA Court Opinion, dated 6/29/15, at 14-15 (citation omitted). Appellant filed a Notice of Appeal on July 24, 2015.

Appellant presents one issue on appeal:

> Whether the [l]ower [c]ourt erred by denying Appellant's PCRA Petition despite a showing that the attorney[-]client relationship had been eroded irretrievably due to defense counsel's actions resulting in Appellant being placed into the Restrictive Housing Unit (RHU) pre-trial at the local jail, and to the extent that the plea negotiation process was interrupted to Appellant's detriment.

Appellant's Brief at 4.

We review the denial of a PCRA petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012).

To be eligible for relief pursuant to the PCRA, Appellant must establish, *inter alia*, that her conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S. § 9543(a)(2). Appellant must also establish that the issues raised in the PCRA Petition have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

Appellant's sole issue on appeal is that trial counsel was ineffective during plea negotiations. The law presumes counsel has rendered effective assistance. *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on Appellant. *Id*. To satisfy this burden, Appellant must plead and prove by a preponderance

of the evidence that: (1) her underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate her interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different. ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003).

The Honorable Jonathan Mark, sitting as the PCRA court, has authored a comprehensive, thorough, and well-reasoned opinion, citing to the record and relevant case law in addressing Appellant's sole claim on appeal. After a careful review of the parties' arguments and the record, we affirm on the basis of the PCRA court's opinion. ***See*** PCRA Court Opinion, dated 6/29/15, at 7-15.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2016

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :
:
:
v. : NO. 781 CR 2010
:
:
MELISSA M. BUCANO, :
:
Defendant :
:
:

OPINION

This case is before the Court on the petition of defendant Melissa Bucano ("Petitioner") for relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. Section 9541 *et. seq.*, in which she alleges that her trial attorney was ineffective. For the reasons that follow, we will deny the petition.

Background

Following an Attorney General investigation into insurance fraud resulting in a grand jury presentment recommending that Petitioner be criminally charged, Petitioner, along with several co-defendants including her mother and brother, was charged with thirty-one crimes, many of which were felonies. Specifically, Petitioner was charged with two counts of Corrupt Organizations, one count of Dealing in Proceeds of Unlawful Activities, one count of Criminal Conspiracy, eleven counts of Insurance Fraud, three counts of Conspiracy to Commit Theft by Deception, one count of Theft

1

by Deception, three counts of Attempt to commit Theft by Deception, eight counts of Forgery, and one count of Insurance Fraud.[1]

Up through trial, Petitioner was represented by three attorneys. Michael A. Ventrella, Esq. ("trial counsel"), her third lawyer and trial counsel, is the attorney whom she claims was ineffective.

Before trial counsel's involvement, prior attorneys twice negotiated favorable pleas on Petitioner's behalf. Petitioner rejected the first plea offer and then accepted but later withdrew the second.

Specifically, on July 5, 2011, a hearing was held before the Honorable Jennifer Harlacher Sibum ("trial judge")[2] to allow Petitioner to enter into a guilty plea to one count of Conspiracy to Commit Insurance Fraud and one count of Theft by Deception, graded as felonies of the third degree. However, the plea was not entered because the Commonwealth conditioned the plea on Petitioner's testifying against her mother, a condition she refused to meet.

Later, on September 8, 2011, Petitioner entered a written guilty plea to two counts (one as originally charged and one amended count) of Conspiracy to Commit Theft. On November 10, 2011, despite being represented by counsel, Petitioner filed a *pro se* motion to withdraw her plea. Ultimately, on December 13, 2011, a hearing was held and Petitioner was granted leave to withdraw her plea. At the hearing, the Commonwealth moved to revoke Petitioner's bail asserting that she was a danger to herself based on both prior suicide attempts and ongoing threats of suicide. (N.T., 12/13/2011, pp. 13-15). The motion was granted and bail was revoked.

---

[1] Commonwealth's Amended Complaint, filed September 13, 2011.
[2] Judge Sibum presided over pre-trial matters, trial, and Petitioner's direct appeal. The PCRA petition was assigned to the undersigned.

2

On December 28, 2011, trial counsel was appointed after her second attorney was granted leave to withdraw. On January 18, 2012, on Petitioner's bail modification motion, bail was set at $250,000. Unable to post bail, Petitioner remained incarcerated at the Monroe County Correctional Facility up through sentencing

After his appointment, trial counsel began to develop a theory of the case and a trial strategy. Since the criminal enterprise that gave rise to the charges filed against Petitioner and others, including her co-defendant mother, began while Petitioner was a minor and continued past the time she became an adult, the strategy trial counsel chose was to blame the mother and argue that the mother exercised undue influence over Petitioner. However, Petitioner did not like this strategy and did not want to have blame cast on her mother. As a result, there were disagreements over strategy both before and during trial. In fact, Petitioner prevented trial counsel from fully arguing his strategy during closing arguments by threatening to object. N.T., 7/15/2014, pp. 17-23, 27, 29-31, 37-38, 44, and 69-73. *See* N.T., 4/18/2012, pp. 6-15).

At the same time, trial counsel, like his predecessors, negotiated a favorable plea, open until commencement of trial, on Petitioner's behalf. Trial counsel believed that the plea would result in a county sentence of six months, as opposed to the much longer state sentence that Petitioner faced if convicted of the multiple felony and misdemeanor offenses with which she had been charged. While trial counsel felt there was a defense, given the very real risk of a lengthy state sentence, he firmly believed that accepting the plea was in Petitioner's best interest, especially since her mother refused to plead and Petitioner disagreed with what counsel believed was a winning strategy. On several occasions, trial counsel informed Petitioner of the risks of going to

3

trial, the maximum sentences she faced, and the guideline sentencing ranges. Each time, he advised and strongly encouraged her to take the plea. Nonetheless, acknowledging that she knew the risks, Petitioner refused to plead. N.T., 7/15/2014, pp. 14-15, 18, 34-36, 44, 63-64, and 70-74. *See* N.T., 3/23/2012, pp. 2-19 and N.T., 7/18/2012, pp. 2, and 36-42).

Trial counsel met with Petitioner several times to discuss the plea offer and trial strategy. On some occasions, Petitioner's mother and her mother's attorney were present so that matters could be discussed globally.

Based on his observations and meetings with Petitioner, as well as Petitioner's disagreement with trial strategy and refusal to accept a plea, trial counsel became concerned that Petitioner's mother, who was her cell mate at the correctional facility, was influencing Petitioner against acting in her own best interests. Specifically, he was concerned that "the mother was never going to plead to everything and was standing in the way and the mother was being very much – advising her daughter not to do anything either and just stand with her (N.T., 7/15/2014, p. 18)." He raised his concerns with the trial judge in a conference several weeks before trial. He asked the trial judge to help separate Petitioner and her mother. He sought to separate the two because he was "hoping that if I talked to [Petitioner] [about the plea] and then she went back by herself instead of talking to her mother about it that she would think about it more clearly. So yes, the goal was to separate her so that her mother would not influence her decision (N.T., 7/15/2014, p. 44)." At trial counsel's request, the trial judge contacted the jail and asked that the two be separated. N.T., 7/15/2014, pp. 18, 22-23, and 44.

On March 23, 2012, a hearing was convened before the trial judge during which Petitioner was given another opportunity to enter the plea that trial counsel has negotiated.[3] At the start of the hearing, Petitioner raised an issue with the terms of the plea and trial counsel asked the trial judge for some additional time to discuss the plea further with his client. N.T., 3/23/12, pp. 2-19. The request was granted and a recess was taken so that Petitioner could speak with trial counsel, her mother, and her mother's attorney. *Id.* pp. 4-5. Though Petitioner insisted she wanted to plead, she refused to admit to any wrongdoing with regard to Met Life, one of the insurance companies referenced in the criminal information. *Id.* at 7. Despite being advised of the risks she faced at trial, Petitioner would not agree to the plea. *Id.* at 9 and 19. *See* N.T., 7/18/2012, pp. 2 and 36-42.

On the same day, in response to the request to separate Petitioner and her mother, the correctional facility placed Petitioner in the restricted housing unit ("RHU"). Neither trial counsel nor the trial judge asked for that placement. Trial counsel testified at the PCRA hearing that Petitioner was placed in RHU because the jail had no other place to put her if she and her mother were to be separated. N.T., 7/15/2014, pp. 22-23. When trial counsel later found out where petitioner had been placed, he attempted to have her moved out of the RHU. He was told that such a move could not be effectuated at his request. At or around the first evidentiary day of trial, trial counsel asked the trial judge to contact the jail and have Petitioner moved. As a result, Petitioner was moved back to general population.

---

[3] Although not completely clear, it appears that the conference at which trial counsel asked the trial judge to help separate Petitioner and her mother occurred on the same date as this hearing.

5

Trial began with jury selection on April 4, 2012. The evidentiary portion of trial began on April 16, 2012 and concluded on April 25, 2012. During trial, the Commonwealth sought and was granted permission to withdraw one count of forgery. On April 25, 2012, the jury convicted Petitioner of one count of Corrupt Organizations, one count of Conspiracy to Commit Corrupt Organizations, one count of Dealing in Proceeds of Unlawful Activity, one count of Conspiracy to Commit Dealing in Proceeds of Unlawful Activities, Insurance Fraud, Theft by Deception, eight counts of Insurance Fraud, three counts of Attempt to commit Theft by Deception, and three counts of Forgery. Petitioner was acquitted of four counts of Insurance Fraud, four counts of Theft by Deception, and one count of Forgery.

On July 18, 2012, Petitioner was sentenced to an aggregate term of forty-five to ninety months incarceration, followed by two years of consecutive probation, and ordered to pay restitution. Petitioner was found to be eligible for the RRRI program. Her alternative minimum sentence was calculated to be thirty-seven months, fifteen days.[4]

Subsequently, Petitioner filed an appeal. On June 24, 2013, the Superior Court affirmed the judgment of sentence. *Commonwealth v. Bucano*, No. 2280 EDA 2012 (Pa. Super., filed June 24, 2013)(memorandum opinion). On October 31, 2013, the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal.

Thereafter, Petitioner filed a PCRA petition. Counsel was appointed and filed an amended petition. A hearing was held on July 15, 2014. Petitioner waived her right to appear in person and participated by video conference from her state correctional

---

[4] Petitioner's mother, who had similarly rejected all plea offers, was also convicted of multiple crimes and given a long sentence.

6

institution. During the hearing, Petitioner presented the testimony of trial counsel and testified on her own behalf. The Commonwealth called no witnesses, but cross-examined both witnesses called by Petitioner.

At the end of the hearing, PCRA counsel requested that the record be left open so that he could obtain and submit to the Court and opposing counsel records from the Monroe County Correctional Facility regarding Petitioner's incarceration in the facility and her placement in the RHU. Additionally, a transcript of the hearing was ordered and a briefing schedule was set. Obtaining records from the correctional facility took much longer than expected. In fact, it took several filings and a conference or two. Ultimately, PCRA counsel received the records and filed them of record. The documents received from the jail show that Defendant was placed in the RHU on March 15, 2012 for "disciplinary" reasons, was placed back into general population, and then was placed in G/Max from March 23, 2012 to April 17, 2012 for "disciplinary" reasons. Petitioner's Motion to Compel Production of Records, filed August 29, 2014, Exhibits A-C and Petitioner's Motion to Supplement record, filed November 4, 2014, Exhibit A. After the records were filed, both parties submitted briefs.

### Discussion

Defendant's ineffective assistance of counsel claims implicate *Strickland v. Washington,* 466 U.S. 668 (1984), as adopted in Pennsylvania by *Commonwealth v. Pierce,* 527 A.2d 973 (Pa. 1987), which requires a defendant alleging ineffectiveness to demonstrate that he was prejudiced by an act or omission of his attorney. In cases where the *Strickland/Pierce* test applies, the analysis begins with

> the presumption that counsel rendered effective assistance. *Commonwealth v. Basemore,* 560 Pa. 258, 277 n. 10, 744 A.2d 717, 728 n. 10 (2000). To obtain relief on a

7

claim of ineffective assistance of counsel, a petitioner must rebut that presumption and demonstrate that counsel's performance was deficient, and that such performance prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In our Commonwealth, we have rearticulated the *Strickland* Court's performance and prejudice inquiry as a three-prong test. Specifically, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error. *Commonwealth v. Pierce,* 515 Pa. 153, 158–59, 527 A.2d 973, 975 (1987).

*Commonwealth v. Dennis,* 17 A.3d 297, 301 (Pa. 2011). *See Commonwealth v. Tedford,* 960 A.2d 1, (Pa. 2008); *Commonwealth v. Dennis,* 950 A.2d 945, 953 (Pa. 2008); *Commonwealth v. Gwynn,* 943 A.2d 940, 945 (Pa. 2008); *Commonwealth v. Mallory,* 941 A.2d 686 (Pa. 2008), *cert. denied,* 555 U.S. 884 (2008)

A corollary to the first element, counsel cannot be found ineffective for failing to pursue a baseless or meritless claim. *Commonwealth v. Roney,* 79 A.3d 595, 604 (Pa. 2013); *Commonwealth v. Washington,* 927 A.2d 586, 603 (Pa. 2007); Commonwealth *v. Harvey,* 812 A.2d 1190, 1199 (Pa. 2002). With regard to the second, the

reasonable basis element, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." [*Commonwealth v.*] *Hanible,* [30 A.3d 426,] 439 [(Pa. 2011)] (citation omitted). We will conclude that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative "offered a potential for success substantially greater than the course actually pursued." [Commonwealth v.] *Spotz,* [18 A.3d 244] 260 [Pa. 2011] (citation omitted). To establish the third, the prejudice element, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. *Id.*

*Roney,* 79 A.3d at 604.

Since a petitioner must prove all three prongs of the *Strickland/Pierce* test, if he or she fails to prove any one of the prongs, the ineffectiveness claim may be dismissed on that basis alone without the need to determine whether the other two prongs have been met. *Commonwealth v. Basemore,* 744 A.2d 717 (Pa. 2000). Similarly, because claims of ineffective assistance of counsel are not self-proving, a petitioner cannot prevail unless he or she properly develops the claim. Thus, when a petitioner fails to properly plead all three prongs, or, having done so, to develop the claim, the petitioner is not entitled to relief and the court may find the claim waived for lack of development. *See Commonwealth v. Steele,* 961 A.2d 786 (Pa. 2008).

Additionally, trial counsel has broad discretion to determine the course of defense tactics and strategy. *See Commonwealth v. Fowler,* 670 A.2d 153 (Pa. Super. 1996); *Commonwealth v. Mizell,* 425 A.2d 424 (Pa. 1981). Where matters of strategy and tactics

> are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different.

*Commonwealth v. Colavita,* 993 A.2d 874, 887 (Pa. 2010)(citations omitted). Further, "[t]he length of time dedicated to client consultation affords no basis for inferring the extent of trial preparation." *Commonwealth v. Howard,* 732 A.2d 1213, 1215 (Pa. Super. 1999)(*citing Commonwealth v. Ellis,* 700 A.2d 948, 960 (Pa. Super. 1997)).

9

Where a petitioner has not provided any evidence to support her allegation of inadequate preparation and it is shown that counsel met with the petitioner prior to trial, trial counsel cannot be deemed to be ineffective for lack of preparation without sufficient proof. *Id.* Thus, a petitioner is not entitled to relief simply because he or she did not like the strategy or because the strategy was unsuccessful. *Commonwealth v. Davis*, 554 A.2d 104, 111 (Pa. Super. 1989).

In this case, Petitioner first claims that trial counsel was ineffective because actions he took prior to trial "irretrievably broke[ ] down the attorney/client relationship to the point that plea negotiations were extremely hampered and any communication of plea offers was met with distrust and ultimately were rejected due to that mistrust." Petitioner's Brief in Support of Amended PCRA Petition, p.1 (unnumbered). Specifically, Petitioner argues that because trial counsel asked the trial judge in this matter to segregate Petitioner from her co-defendant mother prior to trial, thus leading to Petitioner's placement in the RHU, the attorney/client relationship was so broken and rife with mistrust that it caused Petitioner to reject all plea offers. This argument is bootless.

Initially, the foundation of Petitioner's claim seems to be that "[i]t should be axiomatic that if a defendant has the right to effective assistance of counsel during a plea process, then ineffective assistance of counsel during plea negotiations that interrupt that process should also form the basis for PCRA relief." Petitioner's Brief in Support of Amended PCRA Petition, p. 3 (unnumbered). However, the foundation crumbles because even after all this time, Petitioner has still not affirmatively stated that she would have taken a plea and, if so, what the terms she would have accepted

10

would be. It seems to us that a petitioner asking for a finding of ineffective assistance of counsel based on guilty plea negotiations must at least assert that she would have pled guilty. If she does not or cannot make that assertion and recite the terms of the plea she would have accepted, then she cannot prove the requisite prejudice.

This analysis is consistent with the holdings and rationale of the United States Supreme Court in *Missouri v. Frye*, __ U.S. __, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012) and *Lafler v. Cooper*, __ U.S. __, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), the seminal cases from the High Court that explain the duties owed by criminal defense attorneys during plea negotiations. Under *Frye* and *Lafler*, defense counsel have a duty to timely and meaningfully communicate to their clients formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. If an attorney fails to fulfill this duty, he may be found to be ineffective. However, the High Court further held that in order to prove ineffectiveness, a defendant who rejects a plea offer must show that,

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S.Ct. at 1385.

If a petitioner who is not informed of a plea or who rejects a plea because of alleged ineffective assistance of counsel must show that she would have accepted a plea and recite its terms, it follows that a petitioner who is merely arguing that plea negotiations were hampered must, at minimum, make the same showing. This should

11

be especially true in this case since: 1) before trial counsel become involved, Petitioner first rejected one favorable plea and then accepted another favorable plea but later withdrew it; 2) after trial counsel became involved but <u>before</u> she was placed in restricted housing, Petitioner abjectly refused to accept the Commonwealth's <u>final</u> offer, open until trial, despite extra opportunity to speak with her attorney, her mother, and her mother's attorney; and 3) the record amply demonstrates that Petitioner was informed of the risks of going to trial, the benefits of the plea that was offered, the maximum sentences she faced, and the applicable guideline sentencing ranges.

Additionally, Petitioner's claim that the attorney/client relationship was so broken and rife with mistrust that it caused her to reject all plea offers is baseless for several reasons.

First, as noted, Petitioner rejected the first two offers negotiated on her behalf. Both offers were made and rejected long before trial counsel represented her.

Second, as also noted, the Commonwealth's third and final offer was made and rejected by Petitioner <u>before</u> she was placed in restrictive housing and, under any reading of the record and Petitioner's inconsistent testimony, <u>before</u> she was aware that trial counsel had asked to have she and her mother separated at the jail. In this regard, Petitioner testified that she first became aware that trial counsel had requested she be separated from her mother on the first day of trial.

Third, it is clear that Petitioner rejected the Commonwealth's final offer (and prior offers) for reasons that had nothing to do with alleged mistrust of trial counsel. The first offer was rejected because Petitioner did not want to testify against her mother. The third and final offer was rejected because there was an insurance

12

company, Met Life, included in one of the counts that Petitioner did not believe should have been included, a belief that also factored into her withdrawal of the plea she entered on the second offer. Indeed, Petitioner was adamant, at both the March 23, 2012 hearing and the PCRA hearing, that she did not accept the final plea offer because she would not admit to any wrongdoing against Met Life. N.T., 3/23/2012, pp. 7, 9, and 19; N.T., 7/15/2014, 63-64. Petitioner's rejection of the plea based on her belief that Met Life should not have been included was also discussed during her sentencing hearing. N.T., 7/18/2012, pp. 2 and 36-42). Petitioner did not, at any time during either the March 23, 2012 hearing or the sentencing hearing mention rejecting any plea offer due to mistrust of trial counsel, and her testimony to that effect at the PCRA hearing was both inconsistent and incredible.

Fourth, Petitioner's claim that she had come to mistrust trial counsel during the plea and trial processes is belied by the record. On this issue, trial counsel credibly testified that he did not notice any change in their relationship after Petitioner was released from RHU. N.T., 7/15/2014, p. 27. In contrast, Petitioner's testimony on this issue was not credible. For example, Petitioner testified that she attempted to fire trial counsel on the first day of trial based on her discovering his involvement with her separation from her mother. Her recollection was that this was placed on the record in court. However, nothing in the record from the first day of trial shows any attempt by Petitioner to fire trial counsel. While it is true that, two trial days later, Petitioner wanted to fire trial counsel, the basis for Petitioner's assertion was that she disliked trial counsel's opening statement and his defense strategy, not the mistrust she is now asserting. N.T., 4/18/12, pp. 6-15. Specifically, Petitioner stated on the record that she

13

felt trial counsel's opening statements were "untruthful" because he made statements disparaging her mother. *Id.* at pp. 10-11. The alleged mistrust was simply not raised during trial.

Petitioner's related contention that trial counsel's request to separate her from her mother, which request led to her time in RHU, was a punitive response to her rejection of the final plea offer and of counsel's trial strategy is specious. Given the facts, including the history of this case, the crimes charged, Petitioner's age, the influence Petitioner's mother obviously had over her, the divergence of Petitioner's legal interests from that of her mother, Petitioner's rejection of plea offers that trial counsel believed Petitioner should have accepted, and the lengthy sentence that Petitioner faced if convicted, it was objectively and strategically reasonable for counsel to request that Petitioner be separated from her mother. The fact that Petitioner was subsequently placed in RHU was an unfortunate, but unsolicited and unforeseen, consequence.

Finally, after observing Petitioner testify, reviewing the record, and reading the submitted briefs, it is clear to this Court that Petitioner's allegation of ineffectiveness is based on "buyer's remorse," not mistrust of counsel. As noted, over the course of this case Petitioner was presented with three favorable plea offers, all of which would have resulted in conviction of fewer crimes and a significantly shorter sentence than she received after going to trial and being convicted of twenty crimes. Even while asserting ineffectiveness, Petitioner acknowledges that trial counsel informed her of the risks of going to trial, including the severe sentence she faced, and that he repeatedly encouraged her to accept the final plea. N.T., 7/15/2014, pp. 70-71, 73-74. This is

14

simply not a case where a defendant was misinformed by counsel of a favorable plea offer or prejudiced by counsel's deficient performance in advising her to reject the offer and go to trial. Rather, this is a case where a defendant was properly informed about a favorable plea offer, understood both the benefits of the plea and the risks of going to trial, and chose to go to trial. To use a colloquialism, by disregarding trial counsel's plea advice, interfering with his trial strategy, and going to trial, Petitioner "rolled the dice". She lost. Regret for her decision does not allege, much less prove, ineffectiveness.

Petitioner's second claim is that trial counsel rendered ineffective assistance of counsel because he "didn't prepare [her] for testifying at her trial and didn't discuss trial strategy or possible avenues of defense with her prior to trial." Petitioner's Brief in Support of Amended PCRA Petition, p. 1 (unnumbered). This contention may be disposed of quickly.

Initially, the clause quoted in the preceding paragraph is the only portion of Petitioner's brief that mentions the second ineffectiveness claim. The issue is simply not argued in Petitioner's submissions. As a result, Petitioner has waived her second claim due to lack of development. *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) ("[A]s Appellant has cited no legal authorities nor developed any meaningful analysis, we find this issue waived for lack of development"). *See also Commonwealth v. Steele, supra.*

In the alternative, if Petitioner is deemed to have preserved her second ineffectiveness claim, the claim is substantively baseless. Again, the record amply demonstrates that trial counsel informed Petitioner of the final plea offer and the

15

severe sentence and penalties she faced if found guilty at trial. The record, including Petitioner's own statements made during trial in which she specifically challenged counsel's strategy, establishes without doubt that Petitioner was acutely aware of counsel's trial strategy.

In addition, trial counsel credibly testified that he met with Petitioner on multiple occasions prior to trial to discuss the final plea, outline his trial strategy, explain why he believed Petitioner should testify, and prepare for trial. Trial preparation included preparing Petitioner for her testimony. N.T., 7/15/2014, pp. 18, 27-28, 30, and 37-38. In contrast, Petitioner's testimony on this issue was inconsistent and not credible.

Further, as noted above and as trial counsel testified during the PCRA hearing, "the main problem we had was that she [Petitioner] disagreed with my theory of the case in terms of blaming her mother and she didn't want me to do that; so most of our arguments were over that." *Id.* at 27. Trial counsel testified that he "had a very good defense; but the defense was what she didn't like." *Id.* at 38. In fact, Petitioner tried to fire trial counsel after he gave his opening because Petitioner felt he was disparaging her mother. *Id. at* 37-38. Further, Petitioner prevented trial counsel from arguing his defense during closing argument by threatening to object during his argument. *Id.* at 30. Nonetheless, trial counsel still managed to argue most of what he had already prepared months in advance, but was prevented from making what he considered a winning argument by Petitioner. *Id.* at 30-31.

Viewed in light of the applicable standards, trial counsel's strategy was objectively rational and reasonable. In fact, even the modified argument that trial

16

counsel was able and permitted by petitioner to make proved partially successful in that Petitioner was acquitted of ten charges.

Under these circumstances, even if her second claim is not deemed waived, Petitioner is not entitled to relief simply because she did not like the strategy or that it was unsuccessful or only partially successful. *Commonwealth v. Davis*, 554 A.2d 104, 111 (Pa. Super. 1989). In this regard, Petitioner has not suggested an alternative strategy which would have offered a potential success substantially greater than the course actually pursued. *Colavita, supra,* 993 A.2d at 887. Finally, since Petitioner has not provided any evidence to support her allegation of inadequate preparation and it is uncontested that trial counsel met with Petitioner prior to trial, trial counsel cannot be deemed to be ineffective for lack of preparation. *See Commonwealth v. Howard, supra*; *Commonwealth v. Ellis,* 700 A.2d 948, 960 (Pa. Super. 1997).

In sum, Petitioner's claims of ineffective assistance of counsel lack arguable merit, reasonable bases existed for counsel's actions, and Petitioner clearly failed to prove the requisite prejudice. Accordingly, we enter the following:

17

## COURT OF COMMON PLEAS OF MONROE COUNTY
## FORTY-THIRD JUDICIAL DISTRICT
## COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA    :
    :
    v.    :    NO.  781 CR 2010
    :
MELISSA M. BUCANO,    :
    :
    Defendant    :
    :

## ORDER

**AND NOW**, this 29th day of June, 2015, it is **ORDERED** that the petition of defendant Melissa M. Bucano for relief under the Post-Conviction Relief Act is **DENIED**.

_____
JONATHAN MARK,

2015 JUN 29 PM 3 49
MONROE COUNTY, PA
CLERK OF COURTS

Cc:    Brian S. Gaglione, Esq
        Kelly M. Sekula, Deputy Attorney General

18