J-S73026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES JUMAH ROBINSON | |
| Appellant | No. 912 MDA 2014 |

Appeal from the Judgment of Sentence of May 23, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No.: CP-06-CR-0002523-2013

BEFORE:  BOWES, J., WECHT, J., and MUSMANNO, J.

MEMORANDUM BY WECHT, J.:                **FILED DECEMBER 23, 2014**

James Robinson appeals his May 23, 2014 judgment of sentence. Herein, Robinson challenges the sufficiency of the evidence offered by the Commonwealth in support of his conviction of receiving stolen property.[1] We reverse Robinson's receiving stolen property conviction, vacate the judgment of sentence, and remand for resentencing.

In its Pa.R.A.P. 1925(a) opinion, the trial court has summarized the factual history of this case as follows:

> On May 19, 2013, while on patrol in the 200 block of Penn Street, Officer Christopher Dinger observed a domestic dispute

---

[1]  18 Pa.C.S. § 3925.  As noted *infra*, Robinson also was convicted of carrying a concealed weapon without a license, 18 Pa.C.S. § 6106(a)(1).  In this appeal, Robinson does not challenge the sufficiency of the evidence with regard to this conviction.  Rather, he focuses his attention upon his receiving stolen property conviction.

between [Robinson] and Ms. Adrianne Myers. Ms. Mercedes Hodge was also present during the dispute and attempted to get Ms. Myers to calm down and stop arguing with [Robinson]. Officer [Brett] Sneeringer was on location in his vehicle and helped assist Officer Dinger in separating the parties. Officer Dinger questioned Ms. Myers and Ms. Hodge to see what was going on. Officer Sneerigner stayed with [Robinson].

During Officer Dinger's discussion with Ms. Myers, Ms. Hodge approached Officer Dinger and stated that [Robinson] was currently carrying a firearm in his pocket. Officer Dinger then approached [Robinson] and asked him if he was carrying any weapons. During this line of questioning[, Robinson] refused to answer Officer Dinger's questions and "just stared at [Officer Dinger] stone-faced." For officer safety reasons, due to the lack of response by [Robinson] and the notification that [Robinson] may be armed, Officer Dinger patted [Robinson's] exterior for weapons. Officer Dinger . . . immediately felt a revolver in [Robinson's] left front coat pocket. Officer Dinger held the revolver tightly through the jacket and asked [Robinson] if he had a permit to carry the weapon. [Robinson] did not answer Officer Dinger. While Officer Dinger held the weapon through [Robinson's] jacket, Officer Sneeringer handcuffed [Robinson].

[After Robinson was] handcuffed Officer Dinger safely removed a loaded 357 Magnum revolver, serial number 140594, from [Robinson's] left front coat pocket. Officer Dinger then notified TAC 1 to check [Robinson] for outstanding warrants and whether or not [Robinson] had a right to carry permit. TAC 1 (Reading City Police Communications) was unable to find a carry permit on record for [Robinson] and [Robinson] had a scofflaw warrant for an unpaid harassment ticket. [Robinson] was then transported to central processing to await charges.

[T]he weapon found on [Robinson] was registered to Mr. Jeffery Schoenberger of Lebanon, Pennsylvania. Mr. Schoenberger . . . purchased the weapon from a friend. After purchasing the weapon from his friend, Mr. Schoenberger [then] went to the courthouse and transferred the registration in his name. While transferring the registration, Mr. Schoenberger left the weapon at Glenn's Gun Shop in Ephrata, Pennsylvania. When the registration was complete, Mr. Schoenberger . . . went back to the gun shop and retrieved the gun. On May 19, 2013, Officer Dinger contacted Mr. Schoenbeger to inform him that his gun had been recovered. Mr. Schoenberger stated the gun was

supposed to be put away, but it was missing the day Officer Dinger called. Mr. Schoenberger was not aware that the gun was missing until the police contacted him on May 19, 2013. Mr. Schoenberger . . . believed his stepson took the gun out of his house and sold it for money due to his stepson's ongoing drug addiction. Mr. Schoenberger reported the gun stolen to the North Lebanon Township Police Department on May 19, 2013.

Trial Court Opinion ("T.C.O."), 7/16/2014, at 2-3 (citations to notes of testimony omitted).

Having been presented with these facts, a jury found Robinson guilty of the aforementioned crimes. On May 23, 2014, the trial court sentenced Robinson to forty-two months to seven years' incarceration on the concealed weapon conviction, and a consecutive two to ten year prison term on the receiving stolen property conviction.

On May 29, 2014, Robinson filed a notice of appeal. In response, the trial court directed Robinson to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On July 1, 2014, Robinson timely filed a concise statement. On July 16, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Robinson raises the following issue for our consideration: "Whether the evidence admitted at trial was insufficient to support a conviction for the charge of receiving stolen property?" Brief for Robinson at 6. Specifically, Robinson maintains that the evidentiary record was devoid of any evidence that would prove, directly or circumstantially, that Robinson knew that the firearm that he possessed on May 19, 2013 was stolen. Robinson further

contends that mere possession of a weapon is not, *ipso facto*, evidence that he knew the precise origin of that weapon. Brief for Robinson at 10.

When reviewing challenges to the sufficiency of the evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Phillips*, 93 A.3d 847, 856 (Pa. Super. 2014) (citations omitted). Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

A person is guilty of receiving stolen property "if he intentionally receives, retains, or disposes of movable property of another knowing that it

has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a). Stated otherwise, in order for the Commonwealth to prove receiving stolen property beyond a reasonable doubt, the Commonwealth must establish that: (1) the property was stolen; (2) the defendant was in possession of the property; and (3) the defendant knew or had reason to believe that the property was stolen. *Commonwealth v. Matthews*, 632 A.2d 570, 571 (Pa. Super. 1993).

Robinson does not challenge the first two elements. Rather, Robinson focuses his argument upon whether the Commonwealth produced sufficient evidence to prove beyond a reasonable doubt that he knew, or had reason to believe, that the firearm was stolen. "[A] permissible inference of guilty knowledge may be drawn from the unexplained possession of recently stolen goods without infringing upon the accused's right of due process or his right against self-incrimination, as well as other circumstances, such as the accused's conduct at the time of arrest." *Commonwealth v. Foreman*, 797 A.2d 1005, 1012 (Pa. Super. 2002) (quoting *Commonwealth v. Williams*, 362 A.2d 244, 248-49 (Pa. 1976)). That being said, Robinson is correct in asserting that the "mere possession of stolen property is insufficient to prove guilty knowledge, and the Commonwealth must introduce other evidence which can be either circumstantial or direct, that demonstrates that the defendant knew or had reason to believe that the

property was stolen." **Foreman**, 797 A.2d at 1012 (citing **Matthews**, 632

A.2d at 571).

> This additional evidence can include the nature of the goods, the quantity of the goods involved, the lapse of time between possession and theft, and the ease with which the goods can be assimilated into trade channels. Further, whether the property has alterations indicative of being stolen can be used to establish guilty knowledge. Finally, even if the accused offers an explanation for his possession of stolen property, the trier of fact may consider possession as unexplained if it deems the explanation unsatisfactory.

**Foreman**, 797 A.2d at 1012-13.

Robinson makes a colorable argument that the evidence was insufficient to prove that he knew that the firearm was stolen. Indeed, the evidentiary record demonstrates, at best, only that Robinson was in possession of the weapon. The Commonwealth presented no direct evidence that Robinson knew that it was stolen. Additional factors that we must consider support Robinson's argument. The timeframe during which the weapon was stolen was lengthy, approximately three years. Thus, this is not a case where it can clearly be proven that a defendant was in possession of an item that was stolen during a very brief preceding period. The weapon did not bear marks that would demonstrate to a reasonable observer that the weapon was stolen. The weapon did not have obliterated serial numbers or other indicia to indicate that it was stolen, nor did he possess multiple unregistered weapons that also might signify guilty knowledge. Finally, we discern nothing from Robinson's actions at the scene of the crime that would

prove that he knew that the firearm was stolen. In fact, Officer Dinger testified that Robinson was "stone faced" during the crime scene questioning. Notes of Testimony ("N.T."), 2/11/2014, at 18.

Even reviewing the evidence in the light most favorable to the Commonwealth as verdict winner, the Commonwealth did not prove that Robinson actually knew that the firearm was stolen, or even that he had reason to believe that it was "probably" stolen. 18 Pa.C.S. § 3925(a).

We acknowledge that we must draw all reasonable inferences in the Commonwealth's favor. One such inference that we **may** draw is that the unexplained possession of stolen goods is indicative of guilty knowledge for receiving stolen property purposes. ***Foreman***, *supra*. However, as the above-referenced quote from ***Foreman*** indicates, this inference is permissible only when a person cannot explain the possession of "**recently** stolen goods." ***Foreman***, 797 A.2d at 1012 (emphasis added). The inclusion of the condition that the goods be recently stolen undoubtedly is based upon the axiomatic principle that a person is more likely to know that an item is stolen, or have reason to believe as much, the closer in time the possession is to the actual theft. The further removed the possession is from the theft, the less likely it is that the possessor knows the true origin of the item.

Although Mr. Schoenberger testified that he believed that the firearm may have been stolen at some point between July 2011 and October 2011, he testified that the last time that he actually saw the weapon was in July

2010. N.T. at 39-40. Thus, there was approximately three years between the last time that Mr. Schoenberger saw his firearm and when he was informed that it was stolen shortly after Robinson was arrested. With this sizeable window during which the weapon could have been stolen, the record does not support an inference that Robinson was in possession of a recently stolen item. The weapon could have been stolen the night before Robinson was arrested with it, or it could have been stolen almost three years before his arrest. Consequently, the Commonwealth is not entitled to the inference that, because Robinson could not explain the origin of the firearm, he had reason to believe that it was probably stolen. Certainly, without the Commonwealth introducing evidence regarding the proximity of the theft to the possession of the stolen item, any additional inferences that we could draw would not amount to proof beyond a reasonable doubt.

Finally, we note that the trial court and the Commonwealth place significant evidence on the registration process that a person must complete in order to lawfully own a firearm. *See* T.C.O. at 5; Brief for the Commonwealth at 9 (citing 18 Pa.C.S. § 6111; *Commonwealth v. Parker*, 847 A.2d 745, 751 (Pa. Super. 2004) ("the sale of handguns are highly regulated and they cannot be easily obtained from legitimate dealers.")). Relying upon the Robinson's failure to obtain lawful ownership or registration of the weapon, the trial court surmised that Robinson "likely received the firearm through improper means," and that he knew or had reason to know that the "firearm he possessed was likely taken from another individual who

had rightful ownership to the firearm." T.C.O. at 5. The Commonwealth makes a similar argument. *See* Brief for Commonwealth at 9. The problem is that neither the trial court nor the Commonwealth cites any record evidence in support of what amounts to speculation. As noted, none of the commonly-cited factors to prove that a person knew or should have known that a particular item was stolen was present in this case, and the Commonwealth's evidence does not warrant any inferences to demonstrate proof beyond a reasonable doubt. The fact that Robinson did not lawfully own the weapon, or that he did not comply with the statutory requirements for owning a weapon, does not, *ipso facto*, mean that he knew that the weapon was stolen at some unknown point during the prior three years. That evidence proves only that he did not purchase the firearm legally; it says nothing about the means by which the previous owner acquired that weapon. The fact that Robinson did not obtain the firearm through legal channels does not necessarily impart to him knowledge that the person or source from whom he obtained it acquired it by theft. To make that assumption without being able to point to a single piece of corroborating evidence amounts to speculation and guess-work, but not to proof beyond a reasonable doubt. The task of viewing the evidence in the light most favorable to the Commonwealth does not permit this Court to fill in gaps left by the Commonwealth's presentation of its evidence.

We have reviewed the record thoroughly, and for the reasons set forth above, find a dearth of evidence that we may draw upon to conclude that

the Commonwealth proved that Robinson knew that the weapon was stolen or that he had reason to believe that the firearm probably was stolen. For this reason, we reverse Robinson's receiving stolen property conviction, vacate his judgment of sentence, and remand for resentencing on the carrying a concealed weapon conviction.

Judgment of sentence vacated. Case remanded for resentencing.

Judge Musmanno joins the memorandum.

Judge Bowes files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2014